726 F.2d 993
 1984-1 Trade Cases 65,805
 HARRY AND BRYANT CO., Petitioner,
v.
FEDERAL TRADE COMMISSION, Respondent.
State of Arizona, Amicus Curiae.
BASS-SMITH FUNERAL HOME, INC., Petitioner,
v.
FEDERAL TRADE COMMISSION, Respondent.
State of Arizona, Amicus Curiae.
HANES-LINEBERRY FUNERAL SERVICE, Petitioner,
v.
FEDERAL TRADE COMMISSION, Respondent.
State of Arizona, Amicus Curiae.
THOMAS SHEPHERD & SON, INC., Petitioner,
v.
FEDERAL TRADE COMMISSION, Respondent.
State of Arizona, Amicus Curiae.
WARLICK FUNERAL HOME, INC., Petitioner,
v.
FEDERAL TRADE COMMISSION, Respondent.
State of Arizona, Amicus Curiae.
JERNIGAN-WARREN FUNERAL HOME, INC., Petitioner,
v.
FEDERAL TRADE COMMISSION, Respondent.
State of Arizona, Amicus Curiae.
FRANK VOGLER & SONS, INC., Petitioner,
v.
FEDERAL TRADE COMMISSION, Respondent.
State of Arizona, Amicus Curiae.
ANDREWS MORTUARY, INC., Petitioner,
v.
FEDERAL TRADE COMMISSION, Respondent.
and
American Association of Retired Persons, Amicus Curiae/R,
State of Arizona, Amicus Curiae/R.
NATIONAL SELECTED MORTICIANS, Petitioner,
v.
FEDERAL TRADE COMMISSION, Respondent.
State of North Carolina, Amicus Curiae/P.
Continental Association of Funeral and Memorial Societies,
Inc., Amicus Curiae/R.
State of Arizona, Amicus Curiae/R.
The GREATER CINCINNATI FUNERAL SERVICE ASSOCIATION, INC., Petitioner,
v.
FEDERAL TRADE COMMISSION, Respondent.
State of Arizona, Amicus Curiae/R.
 Nos. 82-1850 to 82-1857, 82-1926 and 83-1038.
 United States Court of Appeals,
Fourth Circuit.
 Argued Oct. 6, 1983.
Decided Jan. 12, 1984.
 
 David C. Murchison, P.C., Washington, D.C. (Robert J. Brookhiser, Jr., Daniel P. Oppenheim, Joanne P. Underhill, Howrey & Simon, Washington, D.C., on brief), and Thomas H. Clark, Cincinnati, Ohio (T. Scott Gilligan, Washington, D.C., Clark & Eyrich, Cincinnati, Ohio, on brief), for petitioners.
 Ernest J. Isenstadt, Asst. Gen. Counsel, Washington, D.C. (John H. Carley, Gen. Counsel, Howard E. Shapiro, Deputy Gen. Counsel, Joanne L. Levine, Washington, D.C., on brief), for respondent.
 
 
 1
 Alfred Miller, Peter N. Greenwald, Miller, Singer, Michaelson & Raives, P.C., New York City, on brief, for amicus curiae American Ass'n of Retired Persons.
 
 
 2
 Robert K. Corbin, Atty. Gen., Gary L. Sheets, Asst. Atty. Gen., Civ. Div., Phoenix, Ariz., on brief, for amicus curiae State of Ariz.
 
 
 3
 Rufus L. Edmisten, Atty. Gen. of N.C., H.A. Cole, Jr., Sp. Deputy Atty. Gen., John R. Corne, Associate Atty. Gen., Raleigh, N.C., on brief, for amicus curiae State of N.C.
 
 
 4
 David A. Swankin, Swankin & Turner, Washington, D.C., on brief, for amicus curiae Continental Ass'n of Funeral and Memorial Societies, Inc.
 
 
 5
 Before WINTER, Chief Judge, and HALL and PHILLIPS, Circuit Judges.
 
 K.K. HALL, Circuit Judge:
 
 6
 Pursuant to Section 18(e) of the Federal Trade Commission Act ("the Act"), 15 U.S.C. Sec. 57a(e), petitioners, Harry & Bryant Company and other providers of funeral services, seek direct review of the Federal Trade Commission Trade Regulation Rule on Funeral Industry Practices ("the Funeral Rule" or "the Rule"). After a thorough consideration of the record of the rule-making proceeding, the briefs, and the oral argument, we find that (1) petitioners were provided all the procedural rights to which they were entitled during the rule-making proceeding, (2) the Rule falls within the Federal Trade Commission's ("FTC" 's) rule-making authority, (3) the Rule is supported by substantial evidence, and (4) the Rule does not violate petitioners' First Amendment rights. We, therefore, affirm the Rule in its entirety.
 
 I. THE RULEMAKING PROCEEDING
 
 7
 In 1972, the FTC began an investigation of funeral practices across the nation. As a result of this investigation, the Commission initiated a rule-making proceeding to regulate the funeral industry. The Commission published a notice containing the text of a proposed rule, a statement of the Commission's reasons for issuing it, and an invitation for public comment. Hearings were scheduled to take place in six cities during 1976.
 
 
 8
 In response to the FTC's notice, more than 9000 documents, comprising in excess of 20,000 pages, were submitted by interested parties, including consumers and industry representatives. During the fifty-two days of hearings 315 witnesses testified. The witnesses also presented exhibits and underwent cross-examination by participating parties or the FTC's Presiding Officer. The hearings generated 14,719 pages of transcripts and approximately 4,000 additional pages of exhibits. Thereafter, another comment period was held for rebuttal of any materials previously admitted into evidence. Forty-seven rebuttal submissions were received.
 
 
 9
 Following these hearings, the Presiding Officer and Commission staff concluded that existing funeral practices left the consumer vulnerable to unfair and deceptive practices, and that state regulation against deceptive funeral practices was dominated by industry interests. These conclusions were published in 1978, and the Commission allowed ninety days for public comment. Over 1300 separate comments were received. In February, 1979, the staff and the Bureau Director forwarded to the Commission their final recommendations that a rule be promulgated, but with numerous modifications in response to the comments received. In 1980, the Commission voted to publish for public comment a revised version of the Funeral Rule.
 
 
 10
 A notice containing the revised rule was published in the Federal Register on January 22, 1981, and provided for a sixty-day written comment period, followed by a rebuttal period in which parties could respond to the initial round of comments. After expiration of the comment period and following several public hearings in 1981, the Commission made final revisions to the Funeral Rule and submitted it to both Houses of Congress. When Congressional review expired with no resolution of disapproval, the Commission set January 1, 1984, as the effective date of the Funeral Rule. This appeal followed.
 
 II. THE PROPOSED RULE
 
 11
 The proposed rule defines several unfair practices in the sale of funeral goods and prescribes preventive requirements. Following its investigations and public hearings, the Commission concluded that a significant number of funeral providers had engaged in the following unfair practices:(1) requiring consumers to purchase "pre-packaged funerals" which might include items consumers would not otherwise buy;
 
 
 12
 (2) misrepresenting (a) that the law requires embalming, the purchase of a casket for cremation services, or grave liners and burial vaults; (b) the extent to which funeral goods and services have a preservative and protective value; and (c) whether a mark-up is being charged on "cash advance" items;
 
 
 13
 (3) requiring that consumers who wish to arrange for direct cremation services purchase a casket for use in those cremations;
 
 
 14
 (4) embalming the bodies of decedents without obtaining authorization; and
 
 
 15
 (5) refusing to disclose price information over the telephone.
 
 
 16
 The rule promulgated by the Commission to address these practices requires that before any discussion of arrangements, funeral providers: (1) give consumers a written list containing prices of funeral goods and services on an itemized basis (although providers may also quote prices on combinations of goods and services); (2) offer price information to consumers who request it over the telephone; (3) obtain permission from a family member before embalming (except under certain designated circumstances); (4) refrain from requiring use of a casket for cremation; (5) refrain from making specified misrepresentations; and (6) include several short disclosures on the price list informing consumers of their legal rights and purchase options.
 
 III. PROCEDURAL DUE PROCESS
 
 17
 Petitioners complain that they were denied numerous procedural due-process rights during the rule-making proceeding. We find no merit in any of these challenges.
 
 
 18
 Petitioners first allege that the Commission violated Section 18 of the Act because the Presiding Officer limited the number of witnesses permitted to give oral testimony and allowed equal numbers of pro-rule and anti-rule witnesses to testify, even though a larger number of anti-rule witnesses had applied. We find that the Presiding Officer's efforts to control the oral hearings in an orderly manner were entirely proper, and caused petitioners no prejudice.
 
 
 19
 Section 18 does not guarantee every person a right to testify. Furthermore, pursuant to Section 18(c)(2) the right to testify is expressly subordinated to the Commission's authority under Section 18(c)(3) to make rulings for the purpose of avoiding unnecessary costs or delay. Thus, the Presiding Officer was well within his authority in limiting the number of witnesses permitted to give oral testimony.[1]
 
 
 20
 Second, petitioners complain that they were denied their right to cross-examine consumers, whose written complaints were placed on the public record with their names and addresses deleted, and agency staff who prepared reports submitted for the record. We find that this complaint lacks merit.
 
 
 21
 Section 18 does not provide an automatic right to cross-examine or rebut every comment that is made a part of the rule-making record. The Presiding Officer was correct in rejecting petitioners' motion on the ground that Section 18 does not contemplate that persons who do not testify be subject to cross-examination. Petitioners showed neither entitlement to cross-examine Commission staff nor substantial prejudice from their inability to do so.
 
 
 22
 Third, petitioners claim that they did not have proper opportunity to cross-examine and rebut materials placed in the record by FTC staff after the close of the post-hearing rebuttal period. The FTC staff continued to update the record, a practical necessity in lengthy rule-making proceedings, and ample opportunity was presented for public comments on the new materials. These materials were not made part of the evidentiary record on which the FTC relied in substantiating the Rule. In such circumstances, the FTC's conclusion that cross-examination and rebuttal of such auxiliary materials was inappropriate was clearly permissible.
 
 
 23
 Fourth, petitioners allege that the Presiding Officer erred in requiring that interested parties give him written questions for consumer witnesses, which he then used to cross-examine those witnesses himself. Petitioners also claim gross prejudice in that the Presiding Officer cross-examined all pro-rule witnesses himself, but allowed opponents of the Rule to examine only anti-rule witnesses. Both of these allegations are meritless.
 
 
 24
 Section 18(c)(3)(B) of the Act expressly authorizes the Commission to cross-examine witnesses on behalf of interested persons. The Presiding Officer's decision to cross-examine consumer witnesses was a reasonable way to avoid delay. All consumer witnesses, anti-rule and pro-rule, were cross-examined by the Presiding Officer. All other pro-rule witnesses were available for oral cross-examination by petitioners and other rule opponents. Petitioners have not shown any prejudice from this approach.
 
 
 25
 Fifth, petitioners argue that the Commission abused its discretion by declining to reopen the rule-making proceeding in July, 1982, to include a study on the accessibility of price information on funeral goods and services. We disagree.
 
 
 26
 Failure to reopen a record is not an error unless it is an abuse of discretion. Here, the Commission acted well within its discretion in refusing to impose another delay on the Funeral Rule merely to put information, some of which was of questionable reliability, into the rule-making record.[2] The Supreme Court has held that to foster administrative finality and prevent litigants from interminably delaying agency action, courts may decline to order reopening of the administrative record because of new facts "except in the most extraordinary circumstances." Bowman Transp. Co. v. Arkansas-Best Freight System, 419 U.S. 281, 296, 95 S.Ct. 438, 447, 42 L.Ed.2d 447 (1974), reh'g denied, 420 U.S. 956, 95 S.Ct. 1341, 43 L.Ed.2d 433 (1975). In light of the abundance of information on accessibility of price information already in the record, reopening was clearly not warranted.
 
 
 27
 Lastly, petitioners contend that the Funeral Rule is procedurally invalid because Commissioner Pertschuk did not disqualify himself from reviewing and voting on the Rule. Petitioners allege that because Commissioner Pertschuk had once been a member of the Board of Directors of the Consumers Union when that organization issued a report critical of the funeral industry and later, while a member of the FTC, had observed publicly that certain characteristics of the funeral transaction created opportunity for consumer exploitation, he should have been precluded from voting on the rule pursuant to Cinderella Career & Finishing Schools, Inc. v. FTC, 425 F.2d 583 (D.C.Cir.1970).[3] We find no merit in this argument.
 
 
 28
 Petitioners' allegation rests upon an effort to subject the rule-making proceeding to the same standards as adjudicatory proceedings. Cinderella and the other cases cited by petitioners all involved the latter. Indeed, the same court that decided Cinderella later held "[w]e never intended the Cinderella rule to apply to a rulemaking procedure." Assoc. of Nat'l Advertisers, Inc. v. FTC, 627 F.2d 1151, 1168 (D.C.Cir.1979), cert. denied, 447 U.S. 921, 100 S.Ct. 3011, 65 L.Ed.2d 1113 (1980). Because rulemaking involves policy decisions and requires an informed decision maker, a member of a rule-making body should not be disqualified merely because of prior knowledge or opinions on broad policy or legal issues.[4] Id. at 1168-74. The Commissioner Pertschuk's pre-government affiliation with the Consumers Union is also insufficient to disqualify him from voting on the Funeral Rule. See e.g. Lead Industries Assoc. v. EPA, 647 F.2d 1130 (D.C.Cir.), cert. denied, 449 U.S. 1042, 101 S.Ct. 621, 66 L.Ed.2d 503 (1980).
 
 
 29
 Thus, we hold that petitioners were not denied procedural due process.
 
 
 30
 IV. STATUTORY AUTHORITY AND SUBSTANTIAL EVIDENCE
 
 
 31
 Petitioners further contend that the Funeral Rule is invalid because it is not within the Commission's statutory authority and because it is not supported by substantial evidence. We disagree.
 
 
 32
 Section 5(a)(1) of the Act, 15 U.S.C. Sec. 45(a)(1), prohibits "unfair or deceptive acts or practices," and Section 18, 15 U.S.C. Sec. 57a(a)(1), authorizes the Commission to prescribe "rules which define with specificity acts or practices which are unfair or deceptive acts or practices in or affecting commerce" and "requirements ... for the purpose of preventing such acts or practices." The Funeral Rule defines unfair practices in the sale of funeral goods and services and prescribes preventive requirements. It clearly falls within the Commission's statutory authority.
 
 
 33
 An amicus brief challenges the legality of any federal rulemaking in an area that the states already regulate. Section 18 does not, however, limit the Commission's rule-making authority to areas previously regulated only by the federal government. Furthermore, Congress explicitly considered this issue, and provided in Section 19(d) of the Federal Trade Commission Improvements Act of 1980 ("Improvements Act"), 15 U.S.C. Sec. 57a note, that the existence of state regulation was no barrier to a funeral rule as long as the rule allowed any state to obtain an exemption for its funeral homes by adopting laws that provide protection substantially similar to the federal rule. The Funeral Rule contains such a provision: 16 C.F.R. Sec. 453.9.
 
 
 34
 Nor are we persuaded by petitioners' claim that the Funeral Rule is invalid because it is not supported by substantial evidence. In characterizing the scope of the substantial evidence test when applied to rulemaking, the Supreme Court defined substantial evidence as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." American Textile Mfrs. v. Donovan, 452 U.S. 490, 522, 101 S.Ct. 2478, 2497, 69 L.Ed.2d 185 (1981) (quoting Universal Camera Corp. v. NLRB, 340 U.S. 474, 477, 71 S.Ct. 456, 458, 95 L.Ed. 456 (1951)). Applying that test to this case, we find that the evidence presented to the Commission is more than adequate to support the Funeral Rule.
 
 
 35
 The first section of the Rule requires funeral directors to furnish consumers with an itemized list of prices prior to the selection of funeral goods and services. 16 C.F.R. Sec. 453.2(B), (C) (1983). As the record indicates, the majority of directors use some form of combination pricing in selling funeral goods and services. The most common merchandising technique is "unit" pricing in which the consumer is quoted a single price for a complete package of goods and services. This package includes both necessary and unnecessary items which the consumer may or may not want. The evidence establishes that even if consumers ask about alternatives, and seek to avoid paying for specific unwanted items, directors often will not permit them to do so. In addition, a large number of surveys show that the majority of consumers desire pre-sale information about the cost of funeral goods and services, and that many consumers would not select items in a package if told they had a choice.
 
 
 36
 The Commission concluded that these practices caused substantial consumer injury, which could not be reasonably avoided by consumers, and did not offer corresponding benefits. The section of the Rule proscribing these practices is supported by substantial evidence.
 
 
 37
 The Rule also requires funeral directors to advise consumers who call to ask about the terms or prices at which funeral goods or services are offered, that price information is available by telephone. 16 C.F.R. Sec. 453.2(B)(1) (1983). Pursuant to the Rule, if consumers ask about prices, directors must provide information from their price lists that reasonably answers the question, or give any other responsive information which is readily available. 16 C.F.R. Sec. 453.2(b)(1)(ii) (1983).
 
 
 38
 The record shows that both individual consumers and consumer groups complained about difficulties experienced when they called funeral homes and asked about costs. State surveys included in the record report substantial resistance or flat refusals when survey-takers attempted to gather price data by telephone.[5]
 
 
 39
 Because funeral arrangements must often be made in haste, and because transfer of the body is impractical once taken to a funeral home, use of the telephone, either in anticipation of death or immediately thereafter, may be the only feasible way to compare prices. The Commission's conclusion that failure to disclose prices over the telephone was an unfair or deceptive act or practice is, therefore, supported by substantial evidence and its proposed remedy is justified.
 
 
 40
 The second section of the Rule prohibits several deceptions that can occur in a funeral transaction. First, the Rule prohibits misrepresentations of the legal necessity for embalming, and requires funeral directors to disclose that it is not legally required in most cases. 16 C.F.R. Sec. 453.3(a) (1983). The record includes several studies showing that directors routinely embalm the body and charge for the service without obtaining express permission or informing the consumer that embalming is not legally required. There is plainly substantial evidence supporting the Commission's prohibition of this practice.
 
 
 41
 Second, the Rule forbids misrepresentations that state law requires outer burial containers or that embalming fluids will delay the decomposition of human remains for a long-term or indefinite time. 16 C.F.R. Sec. 453.3(c), (e) (1983). Evidence of such misrepresentations is based upon the testimony of consumers and individuals in the cemetery and casket-making businesses. We find this evidence substantial and, therefore, adequate to support the Rule.
 
 
 42
 Third, the Rule requires that if a funeral director wishes to impose a service charge on a cash advance item he must disclose that fact to the consumer. 16 C.F.R. Sec. 453.3(f) (1983). The record indicates that in California alone, twelve percent of all funeral directors in an industry-sponsored study acknowledged that they impose mark-ups on cash advance items or receive a rebate from the supplier which is not returned to the consumer. The record also contains testimony that this practice is common throughout the country. This portion of the Rule is clearly based on substantial evidence.
 
 
 43
 Fourth, the Rule prohibits funeral directors from requiring a casket for direct cremation, or representing that a casket is required for a direct cremation by state or local law. 16 C.F.R. Sec. 453.3(b); Sec. 453.4 (1983). The Rule states that if funeral providers choose to offer direct cremations, they must make available an unfinished wood box or some other inexpensive container for those consumers who want one, and disclose the availability of this alternative to the consumer.
 
 
 44
 The record contains a plethora of evidence supporting the necessity of this part of the Rule, including over one hundred consumer complaints, numerous surveys, and the testimony of funeral directors. The evidence indicates that many funeral providers falsely inform consumers that state law requires a casket for direct cremation services and that others simply require caskets to be purchased whenever cremation is desired. Even when funeral providers don't actively mislead consumers, the evidence indicates that they nonetheless frequently fail to provide alternative containers or inform consumers that such containers are available for cremations.
 
 
 45
 The Commission found that the effect of this practice is to force consumers to purchase caskets. Similarly, given evidence of widespread consumer ignorance regarding the lack of legal necessity for caskets, it is misleading to offer caskets for cremation without disclosing that legal alternatives exist. We find the evidence presented substantial and, therefore, sufficient to support the Rule.
 
 
 46
 Lastly, the Rule declares it an unfair practice for a funeral provider to embalm a body unless (1) it is required by state or local law, or (2) express prior approval has been obtained from a family member or another person with the authority to request embalming, or (3) the funeral director is unable to contact a family member or authorized person after exercising due diligence, and has no reason to believe the family does not want the body embalmed. 16 C.F.R. Sec. 453.5 (1983).
 
 
 47
 The record indicates that embalming without express permission is a widespread practice. This fact is generally acknowledged by industry representatives themselves. Although this industry practice may reflect a sincere belief that most consumers desire embalming, even the industry's own study indicates nearly ten percent of the funeral buyers in a given year would decline embalming if allowed to choose. These facts support the Commission's conclusion that failure to obtain express permission for embalming causes considerable consumer injury. We find that the evidence provides a substantial basis for the rule designed to prevent this injury.
 
 
 48
 Thus, upon reviewing the whole record, we find that there is substantial evidence supporting the Commission's findings and justifying the Rule promulgated to remedy these unfair, and misleading business practices.
 
 
 49
 V. THE IMPROVEMENTS ACT AND THE FIRST AMENDMENT
 
 
 50
 Finally, petitioners argue that, even if there is substantial evidence supporting the Commission's conclusions regarding pre-purchase disclosures, the remedy of itemized price lists exceeds the Commission's power under the Improvements Act, and violates petitioners' First Amendment rights of commercial free speech. We disagree.
 
 
 51
 Section 19(c)(1)(B)(i) of the Improvements Act expressly prohibits the FTC from promulgating a regulation except to the extent that it prohibits funeral providers from "engaging in any misrepresentation." The remedy of price itemization is not inconsistent with this limitation. The Commission's conclusion that itemized pricing is necessary to prevent unwanted and unnecessary purchasing is a judgment that is specifically allowed by Section 19(c)(1)(B)(iii). This section stipulates that the Commission may promulgate rules designed to "prevent [funeral] providers from conditioning the furnishing of any such goods or services to a consumer upon the purchase by such consumer of other such goods or services." Section 19(c)(1)(A) also supports the Commission's authority to require the remedy of itemized pricing by establishing that the Commission may require funeral providers "to disclose the fees or prices for such goods and services in a manner prescribed by the Commission." (Emphasis added).
 
 
 52
 Nor do we agree that the First Amendment prevents the Commission from remedying deception by means of an affirmative disclosure requirement. Assuming that the sales practices in question are commercial "speech," the First Amendment gives that speech no protection when it is misleading, Central Hudson Gas & Electric Corp. v. Public Serv. Comm'n, 447 U.S. 557, 566, 100 S.Ct. 2343, 2351, 65 L.Ed.2d 341 (1980), and poses no barrier to any remedy formulated by the Commission reasonably necessary to the prevention of future deception. American Home Products Corp. v. FTC, 695 F.2d 681, 713 (3rd Cir.1982). The practices that the Commission sought to remedy by promulgation of the Funeral Rule were unfair and misleading and thus are not "speech" entitled to First Amendment protection.
 
 VI. CONCLUSION
 
 53
 Thus, after a careful review of the whole record, we conclude that petitioners' challenges to the Funeral Rule are without merit. Accordingly, the Rule is affirmed in its entirety.
 
 
 54
 RULE AFFIRMED.
 
 
 
 [1]
 We are not persuaded by petitioners' suggestion that testimony should have been allowed in proportion to the number of applicants per "side." Such a suggestion fails to consider the quality of testimony or the number of persons a speaker might represent and would permit a trade association to "stack the deck" by producing hundreds of speakers for its point of view
 
 
 [2]
 Petitioners concede that some "results of the [study] may be subject to challenge."
 
 
 [3]
 Petitioners claim that Commissioner Pertschuk had publicly denounced the funeral industry; yet, in the speech they cite to substantiate this allegation, the funeral industry was only one of over thirty different professions mentioned, and the Commissioner did not dwell on any one occupation
 
 
 [4]
 Indeed, National Advertisers held that Commissioner Pertschuk's strong belief in the need for FTC rules governing television advertising aimed at young children did not disqualify him from the Commission's rulemaking on that subject. 627 F.2d at 1170-75
 
 
 [5]
 Widespread refusal to disclose price information was virtually conceded during the rulemaking by the National Funeral Directors' Association, which attempted to explain the practice on the grounds that "most" funeral directors fear that disclosure of prices by phone will mislead consumers