**FEDERAL TRADE COMMISSION, Plaintiff,**

v.

**Dudley M. HUGHES, Jr., d/b/a Dudley M. Hughes Funeral Co., Defendant.**

**Civ. A. No. CA 3–87–1546–G.**

United States District Court,
N.D. Texas,
Dallas Division.

Feb. 7, 1989.

See also, 710 F.Supp. 1520.

---

Maridel S. Morgan, F.T.C., Dallas, Tex., for plaintiff.

Barbara St. Clair, Marshal W. Dooley and Richard G. Mills, Dooley, Rucker, Maris & Foxman, Dallas, Tex., for defendant.

## MEMORANDUM ORDER

FISH, District Judge.

This case is before the court on the motion for summary judgment of the plaintiff Federal Trade Commission ("the FTC"). For the reasons stated below, the motion is granted.

### I. *Nature of the Case*

The FTC's Funeral Rule ("the Rule"), 16 C.F.R. § 453, regulates unfair and deceptive acts in the funeral home industry, and has the force of law under the Magnuson–Moss Act, 15 U.S.C. § 2301, *et seq.* It became effective in 1984. The Rule applies to "funeral providers," which are defined as persons, partnerships, or corporations which sell or offer to sell funeral goods and services to the public. 16 C.F.R. § 453.1(j) and (n). The FTC filed this suit in 1987, alleging that defendant Dudley M. Hughes, Jr. d/b/a Dudley M. Hughes Funeral Co. had violated, and was continuing to violate, the Rule. Discovery is complete, and the FTC has moved for summary judgment.

### II. *Summary Judgment Standard*

Summary judgment is appropriate when a party fails to establish the existence of an essential element of his case on which that party will bear the burden of proof at trial. *Celotex Corporation v. Catrett,* 477 U.S. 317, 323–24, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986); *Washington v. Armstrong World Industries, Inc.,* 839 F.2d 1121, 1122 (5th Cir.1988). The failure of the non-movant's proof as to any one essential element renders all other facts immaterial. *Celotex Corporation,* 477 U.S. at 323–24, 106 S.Ct. at 2553.

The non-movant's evidence is to be believed and all justifiable inferences will be drawn in the non-movant's favor. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 254–55, 106 S.Ct. 2505, 2513, 91 L.Ed.2d 202 (1986); *Phillips Oil Company v. OKC Corporation,* 812 F.2d 265, 272 (5th Cir.), *cert. denied,* —— U.S. ——, 108 S.Ct. 152, 98 L.Ed.2d 107 (1987). Nevertheless, unless there is sufficient evidence for the jury to return a verdict in the non-movant's favor, there is no genuine issue for trial. Evidence that is "merely colorable" or "not significantly probative" is insufficient. *Anderson,* 477 U.S. at 250, 106 S.Ct. at 2511. Likewise, a mere scintilla of evidence will not suffice. *Id.,* 106 S.Ct. at 2512.

Moreover, the non-movant may not rely on naked assertions of dispute, but must adduce admissible evidence creating a fact issue as to each essential element of the claim. *Matter of Lewisville Properties, Inc.,* 849 F.2d 946, 950 (5th Cir.1988). Conclusory affidavits will not suffice to create a genuine issue of fact. *Shaffer v.*

*Williams,* 794 F.2d 1030, 1033 (5th Cir. 1986); *Newkirk v. Keyes Offshore, Inc.,* 782 F.2d 499, 502 (5th Cir.1986).

Finally, a dispute over the legal inferences to be drawn from the facts will not preclude summary judgment. *Sagers v. Yellow Freight System, Inc.,* 529 F.2d 721, 728 n. 13 (5th Cir.1976); *International Association of Machinists and Aerospace Workers, District 776 v. Texas Steel Company,* 538 F.2d 1116, 1119 (5th Cir.1976), *cert. denied,* 429 U.S. 1095, 97 S.Ct. 1110, 51 L.Ed.2d 542 (1977).

### III. *Violations of the Rule*

#### A. Properly Itemized Final Statements

16 C.F.R. § 453.2(b)(5) requires funeral providers to give each customer an itemized written statement of funeral goods and services selected at the end of the initial arrangements conference, even if the customer does not sign a contract. There is no genuine question of material fact as to whether Hughes has violated 16 C.F.R. § 453.2(b)(5). In 959 instances, the Dudley Hughes Funeral Company ("DHFC") failed to provide such statements at the end of the initial conference. McCowan affidavit ¶ 17(e), Appendix G to FTC's motion for summary judgment [citations to the FTC's summary judgment appendix will hereafter be abbreviated as "App."]. Moreover, 22 former customers have stated that they did not receive final itemized statements at the end of the initial conference. App. C, Nos. 2–5, 7–17, 19–20, 22–24, 27, 30. *See also* deposition of Maxine DeBord [citations of deposition testimony will hereafter be abbreviated by the name of the witness followed by "dep."], App. E, No. 3 at 95 (funeral director's testimony that several customer files contained blank or unsigned statements).

The Rule also requires an itemized statement listing each item and its price. 16 C.F.R. § 453.2(b)(5). In several instances, Hughes and his employees simply gave a blanket price for professional services, without itemizing each service and its price. App. D, Nos. 1–5. Hence, customers could not discern what professional services DHFC was charging them for.[1] Even Hughes, given an improperly itemized final statement from DHFC's files, stated that he would need the entire file to discern what the customer had actually purchased. Hughes dep., App. E, No. 5 at 87. A DHFC funeral director likewise stated that he could not discern the actual services from several DHFC final statements. Cox dep., App. E, No. 1 at 82. In his affidavit, Hughes stated that it is DHFC policy to provide an itemized statement. Hughes affidavit at 2. This conclusory statement does not, however, satisfy the evidentiary requirement imposed on him to prevent summary judgment.[2] The absence of proper itemization defeats the Rule's policy of full disclosure to the purchaser before the decision to purchase is finally made.

#### B. Mandated Disclosure Regarding Charges and Legal Requirements on the Final Statement

Section 453.4(b)(2)(i)(B) requires Hughes to make the following disclosure on each statement given under 16 C.F.R. § 453.2(b)(5):

Charges are only for those items that are used. If we are required by law to use any items, we will explain the reasons in writing below.

The purpose of this disclosure is to prevent oral misrepresentations about legal requirements. Funeral Rule Statement of Basis and Purpose and Regulatory Analysis, App. A at 42,277 (hereafter "Statement of Purpose"). Without a written record of any misrepresentation, the customer cannot prove that one occurred. Since the Rule's effective date, Hughes has failed to include the disclosure on 993 customer

---

1. In particular, customers could not discern whether they were charged for embalming or its costs. One of the reasons for promulgation of the Rule was to prevent false representations that state law required embalming. Funeral Rule Statement of Basis and Purpose and Regulatory Analysis, App. A at 42,275–76.

2. Hughes also stated that an itemized statement is provided prior to the conclusion of arrangements "if the customer desires." Hughes affidavit at 2. This practice clearly violates the Rule, which requires DFHC to give final statements to *all* customers.

statements. McCowan affidavit, App. G, ¶ 17(f). *See also* Corrected Amended Answer ¶ 2 (admitting that disclosure not given); Hughes dep., App. E, No. 5, at 47–48 (same).

On several final statements, Hughes used the following language:

Charges are only for those items used. If the type of funeral selected required extra items, we will explain the reasons in writing on this agreement.

App. E, No. 5 at 47–48; App. D., Nos. 1–5, 9, and 13–18. This language is neither that specified in the Rule nor its substantial equivalent. It does not inform the purchaser that DHFC can charge only for extra items which are required by law and that legal requirements must be explained in writing.

### C. Failure to List Legal, Cemetery, or Crematory Requirements on Final Statements

By the terms of 16 C.F.R. §§ 453.2, 453.-3, and 453.4, Hughes is obligated to include on the final statement a written identification and description of any legal, cemetery, or crematory requirements that are represented to the purchaser as necessitating the purchase of a funeral good or service. This requirement not only discourages the funeral provider from making misrepresentations in order to sell goods and services, but also guarantees that the buyer will have adequate information about any such requirements. Statement of Purpose, App. A at 42,277–78.

There is no genuine question of material fact as to whether Hughes has violated these sections. In 776 instances, Hughes and his employees did not identify and describe such requirements, although DHFC required the customer to purchase an item because of them. McCowan affidavit, App. G, ¶ 17(g).[3]

### D. Mandatory Embalming Disclosure

16 C.F.R. § 453.5(b) requires funeral providers to place on the contract a particular written disclosure concerning embalming. DHFC has failed to place the disclosure on 998 contracts since the Rule's effective date. McCowan affidavit, App. G, ¶ 17(h). Hughes has been unable to explain why he did not include the statement. Hughes dep., App. E, No. 5 at 44–47.

Moreover, although Hughes included the disclosure language on one of his pre-printed pre-need contract forms, DHFC charged for embalming on two such contracts without providing the written explanation required by the disclosure. App. D, Nos. 7 & 8. This omission is also a § 453.5 violation.[4]

### E. General Price Lists

Section 453.2(b)(4) requires the funeral provider to give a printed or typewritten general price list to anyone inquiring in person about funeral arrangements or prices. The director must provide the list "upon beginning discussion either of funeral arrangements or of the selection of any funeral goods or funeral services." This timing is crucial. Because the charges incurred by customers depends on the type of funeral selected, the price list must be available prior to selection. Otherwise, customers cannot make informed decisions. *See* Statement of Purpose, App. A at 42,269.

DHFC employees have testified that consumers were not given general price lists at the proper time. David DeBord dep., App. E, No. 2 at 20, 33; Spears dep., App. E, No. 7 at 33–36; Thacker dep., App. E, No. 8 at 28–29, 36, 37–38. The duty to provide a price list commences when a discussion of arrangements begins. In several instances, DHFC employees went to hospitals or homes to discuss funeral arrangements immediately after death, but they did not provide price lists. David DeBord

---

3. Hughes claims in his affidavit that it is company policy to inform customers when such items are necessary. The statement is conclusory and thus does not meet the evidentiary standard to defeat a summary judgment motion. Moreover, Hughes states that the notification may be oral, contrary to the letter and spirit of the Rule.

4. Because many of the final statements did not break down the professional services category, which included embalming, it is impossible to tell if DFHC charged for embalming in other instances.

dep. at 33; Spears dep. at 35–36; Thacker dep. at 28–29, 36, 37–38. Since DHFC picks up the body for a funeral at DHFC, these hospital/home discussions are the initiation of arrangements. Thus, Hughes' practice deprives customers of a price list when they begin discussions. Likewise, 26 customers have stated that they received no written price lists when they went to DHFC to make funeral arrangements. App. C, declaration Nos. 1–3, 5–21, 23, 26–30. Another customer received the list at the end of the arrangements discussion. App. C., No. 24.

Further, DHFC has sought permission to embalm when the body is removed from the home without providing a price list. Spears dep., App. E, No. 7 at 30–31; Thacker dep., App. E, No. 8 at 28, 36. These customers have thus authorized expenditures without knowing their amounts.

Section 453.2 also requires the price list to follow a certain itemized format which allows the customer to compare the various services. Statement of Purpose, App. A at 42,272. Hughes' lists do not conform to this format. They contain neither an effective date, see § 453.2(b)(4)(C), nor the price of 16 particular items required by § 453.2(b)(4)(D)(ii). App. D, Nos. 10 and 11.

### F. Casket Price Lists

Hughes combined his general price list with the casket price list required by § 453.2(b)(2). App. D., Nos. 10, 11. This casket price list must also be given before casket discussion or viewing begins. Statement of Purpose, App. A at 42,272. Hence, when Hughes failed to give any price list to customers when they made funeral arrangements, he also violated the casket price list rule. Indeed, of the 26 customer-declarants who stated that they did not receive price lists, 13 stated specifically that they ordered caskets.[5]

### G. Outer Burial Container Price List[6]

16 C.F.R. § 453.2(b)(3) requires funeral providers to offer an outer burial container price list to anyone inquiring either about the containers or their prices. This list must be offered upon beginning discussion of, or before showing, the outer burial containers. At least five of the customer-declarants stated that they ordered the containers, but did not receive a price list. App. C, Nos. 12, 16–18, 20.[7]

### H. Telephone Price Information

16 C.F.R. § 453.2 requires a funeral provider to tell callers inquiring about funeral terms, conditions, or prices that price information is available over the telephone. Due to the strict time constraints accompanying the at-need funeral situation, this disclosure alerts consumers to the availability of price information at a critical juncture in the decision-making process. Statement of Purpose, App. A at 42,265 & 42,268.

DHFC has failed to inform telephone inquirers that price information is available over the telephone. App. C, Nos. 1, 4, 9, 12, 23, 27, 29, (customer statements); David DeBord dep., App. E, No. 2 at 24; Maxine DeBord dep., App. E, No. 3 at 76; Thacker dep., App. E, No. 8 at 58–59 (price information was volunteered only if specifically requested by the caller).

### IV. *Validity of the Funeral Rule*

In his statement of disputed facts and issues of law, Hughes questions whether the Rule is unconstitutionally overbroad, is void for vagueness, and violates his First Amendment rights. Defendant fails to provide any reasoning, authority, or evidence in support of these queries. Mere questions will not defeat a motion for summary judgment. *See Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corporation*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986) (once movant for summary judgment has carried its burden under F.R.Civ.P. 56(c), to prevent sum-

---

**5.** The others did not refer to caskets or the type of funeral service used.

**6.** Outer burial containers include vaults and graveliners.

**7.** For example, one declarant was told the day before the funeral service that he would have to purchase a $1,000 graveliner. No price list was given. Gutierrez declaration, App. C, No. 12.

mary judgment opponent must do more than simply show there is some metaphysical doubt as to movant's right to prevail). Moreover, the court concludes that, as a matter of law, the Rule does not violate the Constitution.

■ Specifically, the Rule does not violate the First Amendment. The FTC is free to remedy deception by use of an affirmative disclosure requirement. *Harry and Bryant Co. v. Federal Trade Commission*, 726 F.2d 993, 1001–02 (4th Cir. 1984). The First Amendment gives no protection to speech that is deceptive or misleading. *Central Hudson Gas & Electric Corporation v. Public Service Commission of New York*, 447 U.S. 557, 566, 100 S.Ct. 2343, 2351, 65 L.Ed.2d 341 (1980); *United States v. Central Adjustment Bureau, Inc.*, 823 F.2d 880, 881 (5th Cir.1987). Because the practices that the FTC sought to remedy by promulgating the Rule were unfair and misleading, they are not speech entitled to protection under the First Amendment. *Harry and Bryant Co.*, above, 726 F.2d at 1002.

■ Nor is the Rule overbroad. Based on careful consideration and study of funeral home practices, *see Harry and Bryant Co.*, above, 726 F.2d at 999–1001 (detailing the studies and evidence supporting the Rule), it is a reasonably necessary means of preventing deception, *id.* at 1002. Consequently, it is not overbroad.

Likewise, the Rule is not vague. It sets out the requirements in precise terms. The wording of each required disclosure is carefully set out. The Rule specifically instructs funeral home providers as to what they are to do, how they are to do it, and when they are to do it.

### V. *Remedy*

### A. Civil Penalty

■ 15 U.S.C. § 45(m)(1)(A) authorizes a civil penalty of not more than $10,000 per violation from any person who violates the Rule "with actual knowledge or knowledge fairly implied on the basis of objective circumstances" that the act is unfair or deceptive and prohibited by the Rule. The court's determination of the penalty amount depends on the degree of culpability, history of prior such conduct, ability to pay, effect on ability to pay, effect on the ability to continue to do business, and "such other matters as justice may require." 15 U.S.C. § 45(m)(1)(C).

■ Under 15 U.S.C. § 45(m)(1)(C), each day of a continuing failure to comply with the Rule is treated as a separate violation. Numerous violations of the Rule on different days have been demonstrated in this case. Nevertheless, the FTC has only sought a $10,000 penalty for each of the eight categories of violation, rather than seeking a penalty for each and every violation. Consequently, it seeks an $80,000 civil penalty. Given the number and extent of violations which have occurred, this is a reasonable method of figuring the penalty.

### 1. *Actual Knowledge*

Hughes has admitted that he is familiar with the provisions of the Rule. In May 1984, Hughes attended a seminar which focused on compliance with the Rule. App. F, No. 6, Interrog. Ans. No. 5; Hughes dep., App. E, No. 5 at 61. By letter of October 30, 1984, Hughes detailed his procedures for monitoring DHFC's compliance with the Rule. Hughes letter, App. F, No. 1. He further stated that DHFC had sent its representatives "to all information sources" to insure that DHFC pricing policies conformed to the Rule "in every possible situation." *Id.*

Hughes has admitted that, at all times material to this matter, he has directed, controlled, and formulated the acts and practices of DHFC. Corrected Amended Answer ¶ 1; Hughes dep., App. E, No. 5 at 7. He alone has been responsible for the content of DHFC price lists and statement forms. Hughes dep., App. E, No. 5 at 7. Not only did Hughes control and formulate DHFC practices, but he monitored his employees' activities on a continual basis. Corrected Amended Answer ¶ 1; Hughes letter, App. F, No. 1; Hughes dep., App. E, No. 5 at 40. *See also* Thacker dep., App. E, No. 8 at 37–38 (stating specifically that Hughes was aware of employees' violations). In addition, Hughes permitted

DHFC employee J.T. Spears to alter customer files during the FTC's preliminary investigation of non-compliance on the part of DHFC. Maxine DeBord dep., App. E, No. 3 at 98, 100–103. Hence, Hughes was aware of DHFC practices that violated the Rule.[8]

### 2. *Degree of Culpability*

As demonstrated above, Hughes has had actual knowledge of Rule violations, is responsible for the day-to-day decisions involving DHFC (including the form and content of price lists and contract forms), and has directed and controlled his employees' activities. Thus, his culpability is complete.

### 3. *History of Prior Conduct*

The FTC has brought this action based on Hughes' numerous violations of the Rule since its promulgation in 1984. Hence, Hughes has had a recurring and continual history of prior conduct.

### 4. *Ability to Pay*

Hughes has the ability to pay an $80,000 penalty without jeopardizing his business operations or the employment status of his staff. His net worth, as of May 31, 1987, was $1,671,830. Of this, $1,214,895 represents Hughes' equity in his three funeral homes. Thus, his business is financially solid. Financial Statement, App. F, No. 2. His 1986 U.S. Individual Tax Return indicates an adjusted gross income of $110,777 for Hughes and his wife for 1986. App. F, No. 3. Hughes has not filed a 1987 tax return. Hughes affidavit at 4.[9] Hughes' affidavit states that his company made $8,763.83 in 1987. There is no indication, however, as to who prepared the income statement attached to the affidavit. More-

over, the statement treats depreciation as an out-of-pocket expense, rather than an adjustment to income. Once the business depreciation figures are added to Hughes' alleged $8,763.83 income, the sum is $93,032.02. Furthermore, the statement deducts expenses for the Cave and Hampton Funeral Homes, but does not report the revenues from those homes. Thus, the statement is apparently incomplete. Additionally, the affidavit deals only with Hughes' business finances, and does not even discuss his net worth.[10] Consequently, the court finds Hughes' claim of inability to pay to lack proper evidentiary support.

### 5. *Effect on Ability to Pay*

Hughes can pay a $80,000 penalty without risking his funeral business. He owns two of the homes free and clear of encumbrance. Financial Statement, App. F, No. 2. The Buckner home has an unencumbered market value of $700,000; the Hampton home of $502,000. Both would provide sufficient collateral for a loan from a bank or other lending institution to pay the $80,000 penalty.

### 6. *Effect on Ability to Continue to do Business*

The $80,000 fine would not adversely effect Hughes' ability to continue to do business. The penalty is less than 5 percent of Hughes' net worth and less than 7 percent of the net value of the equity value of his funeral homes. Moreover, Hughes could easily obtain a loan, if necessary, to pay the fine.

### 7. *Penalty*

The court concludes that an $80,000 fine comports with 15 U.S.C. § 45(m)(1), would

---

**8.** Hughes alleges that he requested the FTC to review his documents to determine whether they were in compliance with the Rule, but that the FTC never did so. Hughes affidavit, September 6, 1988 at 3. This is no excuse for violating the Rule. The Rule states precisely what is required. It specifically states the wording of the mandatory disclosures, the content of the various price lists, and when they must be given. Its other requirements are quite specific, too. FTC review is not necessary for a funeral director to comply with the Rule.

**9.** On November 14, 1988, this court ordered Hughes to submit his 1987 return if he had filed it. No return was submitted by the due date of November 25, 1988.

**10.** The Cunningham Northington Two Year Comparison, attached as Exhibit B to Hughes' affidavit, is a two year comparison of his 1985–1986 net worth. This comparison has little probative value in determining what fine he can presently pay.

serve the interests of justice, and would deter future violations of the Rule—on both a general and specific level.

### B. Injunction

45 U.S.C. § 53(b) authorizes the court to permanently enjoin the violation, by any person or entity, of laws enforced by the FTC. The Rule has the force of law under the Magnuson–Moss Act.

Hughes has been found to have violated the Rule on numerous occasions. Although DHFC has altered some of its pre-need contracts, it has not changed all forms, including at-need contracts and price lists. Moreover, there is no indication that Hughes has altered other practices of DHFC which do not involve paper forms (e.g., telephone inquiry behavior, the timing of the offering of price lists). There is a cognizable danger of recurrent violation in this case, as indicated by Hughes' past unlawful conduct. *See Federal Trade Commission v. Kitco of Nevada, Inc.*, 612 F.Supp. 1282, 1296–97 (D.Minn.1985) (discussing § 53(b) standard).

Hughes has continued to violate the Rule although he had actual knowledge of its contents. The violations have been continuous and ongoing. Moreover, consumers who contact DHFC about funeral arrangements and who make arrangements through DHFC are ill-equipped to enforce the provisions of the Rule. As demonstrated above, these violations have caused great harm to the consumers, and prevented them from obtaining truthful and necessary information concerning their purchases of funeral items and services from DHFC. For these reasons, an injunction is necessary to protect the public from further violations of the Rule.

### VI. *Conclusion*

Defendant Hughes has violated the Rule on numerous occasions. The FTC has presented exhaustive evidence in support of its motion for summary judgment which discharged its summary judgment burden. Hughes' response is insufficient to defeat that motion. The FTC is entitled to $80,-000 in civil penalties, an injunction against further violations of the Rule, and its just costs. Consequently, the FTC's motion for summary judgment is GRANTED.

Within fifteen days of this date, counsel for the FTC will submit a proposed form of judgment consistent with this memorandum order.

SO ORDERED.