AOYAGI, J.
*196 *789 Petitioner, the operator of a funeral home, seeks review of a final order of the State Mortuary and Cemetery Board, imposing $14,000 in civil penalties. The board concluded that petitioner violated various laws governing the death care industry, particularly with respect to two decedents and in connection with its interactions with the board. In its first assignment of error, petitioner argues that the board misinterpreted 16 CFR section 453.5 and erroneously concluded that petitioner violated that regulation. In its second assignment of error, petitioner argues that the record does not support the board's determination that petitioner violated certain statutes and administrative rules. For the reasons that follow, we affirm.
I. FACTS
The board decided this matter on summary determination. The pertinent historical facts are undisputed for purposes of judicial review.
A. Decedent AAA
Petitioner was engaged to provide funeral services for Decedent AAA. As part of that engagement, petitioner was responsible for the final disposition of AAA's remains. One of petitioner's employees completed a form entitled "Authorization for Disposition with Embalming or Refrigeration," which contained an "x" indicating that embalming had been requested. A woman named Ruiz signed and dated the form and petitioner signed the "Acceptance" section. Nothing on the form identified Ruiz's relationship to the decedent, nor were her address and phone number included.
On the same day, petitioner executed a "Statement of Funeral Goods and Services Selected" (SFGSS) for Decedent AAA with a woman named Ochoa. It stated that the cost for embalming was "inc" with other charges. It did not state the reason for embalming. A preprinted portion of the form included the statement:
" * * * If you selected a funeral that may require embalming, such as a funeral with viewing, you may have to pay for *197 embalming. You do not have to pay for embalming you did not approve if you selected arrangements such as a direct cremation or immediate burial. If we charged for embalming, we will explain why below.
"Reason for Embalming: Family Request Other: ________."
(Underscoring in original.) Neither "Family Request" nor "Other" was circled, and the "Other" line was left blank, on AAA's SFGSS form.
B. Decedent G
Decedent G's mother, Fox, engaged petitioner to provide funeral services for G. Petitioner sent Fox a bill for the agreed services, which included, among other things, petitioner providing "Thumbies," a keepsake jewelry item engraved with G's fingerprint; G's death certificate; a memorial folder; a celebration of life CD to be played at G's service; a real-time web stream of G's service; and an engraved urn. Fox paid petitioner's bill for these services.
There were multiple problems with the services provided. Petitioner did not provide the Thumbies. The death certificate contained errors. The memorial folder stated the wrong location for G's service. The CD malfunctioned and could not be played in full at the service. The web stream failed, so friends and family were unable to watch the service in real time online. And the urn was not engraved. Petitioner engaged in a series of emails with Fox after the service, although it did not respond to all of her emails. More than four months passed before petitioner refunded any money to Fox. Meanwhile, petitioner continued to assure Fox that the Thumbies were coming; months later, petitioner admitted to Fox that it did not have Decedent G's fingerprints and could not obtain Thumbies with G's fingerprint.
When the board received a complaint regarding the services that petitioner rendered to Fox, the board contacted petitioner and requested information and records in aid of the investigation. Petitioner responded but *790 did not provide everything requested. When the board then formally requested petitioner's entire permanent file for Decedent G, petitioner provided only a few items. *198 C. Board Action
In its final order, the board concluded that petitioner had committed two violations with respect to Decedent AAA, for which it imposed two $1,000 civil penalties. As one violation, the board concluded that petitioner had violated OAR 830-040-0000(7) and OAR 830-030-0090(4)(g) when it failed to keep detailed and complete records for all transactions performed for the care, preparation, and final disposition of AAA's remains. As the other violation, the board concluded that petitioner had violated 16 CFR section 453.5 when it charged for embalming AAA but did not specify the reason for embalming on AAA's SFGSS form.
The board concluded that petitioner had committed twelve violations with respect to Decedent G, for which it imposed twelve $1,000 civil penalties, bringing the total civil penalties against petitioner to $14,000. Specifically, the board concluded that petitioner had committed (1) six violations of OAR 830-030-0090(1)(b) by failing to implement and follow through with contractual arrangements; (2) two violations of ORS 692.180(1)(a) and (b) by making false or misleading statements to Fox regarding the status of the Thumbies, the status of Fox's refund, and whether G's urn could be engraved; (3) two violations of OAR 830-030-0090(5)(d) and OAR 830-040-0010(3) by making false or misleading statements to the board and giving false or misleading information to an investigator; and (4) two violations of OAR 830-030-0090(5)(f) and (g) by failing to provide the board with requested documents or information and by failing to cooperate with the board's investigation.
II. FIRST ASSIGNMENT OF ERROR
In its first assignment of error, petitioner argues that the board erred when it concluded that petitioner had violated 16 CFR section 453.5 in connection with Decedent AAA. We review a grant of summary determination for legal error. Nacey v. Board of Massage Therapists , 287 Or.App. 228, 231, 401 P.3d 275 (2017).
ORS 692.180(h) authorizes the board to impose civil penalties for a licensee's violation of any regulations adopted by the Federal Trade Commission regulating *199 funeral industry practices. One such regulation is 16 CFR section 453.5, which provides, as relevant to this case:
"(a) Unfair or deceptive acts or practices . In selling or offering to sell funeral goods or funeral services to the public, it is an unfair or deceptive act or practice for any provider to embalm a deceased human body for a fee unless:
" * * * * *
"(2) Prior approval for embalming (expressly so described) has been obtained from a family member or other authorized person; * * *
" * * * * *
"(b) Preventive requirement . To prevent these unfair or deceptive acts or practices, funeral providers must include on the itemized statement of funeral goods and services selected, required by § 453.2(b)(5), the statement: 'If you selected a funeral that may require embalming, such as a funeral with viewing, you may have to pay for embalming. You do not have to pay for embalming you did not approve if you selected arrangements such as a direct cremation or immediate burial. If we charged for embalming, we will explain why below.' "
16 CFR § 453.5 (italics in original).
The board concluded that petitioner had violated 16 CFR section 453.5 because petitioner charged for embalming Decedent AAA but did not state the reason for doing so on AAA's SFGSS form. Petitioner contends that the board misinterpreted section 453.5 in reaching that conclusion. Petitioner argues that the regulation "does not require funeral providers 'to explain the reason for embalming.' " Rather, in petitioner's view, it requires only that funeral providers (1) obtain prior approval from a family member or other authorized person before charging for embalming, and (2) include the specific language from section 453.5(b) in the SFGSS form. In *791 other words, petitioner argues that it was required to include the statement "If we charged for embalming, we will explain why below " on AAA's SFGSS form, but was not required to explain why below.
When construing a federal regulation, "we follow the methodology prescribed by federal courts."
*200 Hagan v.Gemstate Manufacturing., Inc. , 328 Or. 535, 545, 982 P.2d 1108 (1999). "In construing regulations, a federal court looks first to the plain meaning of the wording of the regulation. If the wording is ambiguous, the court examines administrative interpretation of the regulation." Id . (internal citation omitted). When there is no administrative interpretation, "the court considers such factors as the overall purpose of the governing statute, the overall purpose of the regulation, the history of the regulation, and the practical consequences of suggested interpretations to determine the intent of the enacting body." Id .
Petitioner's interpretation of 16 CFR section 453.5(b) cannot be squared with the text of the regulation. The requirement to "explain why below" is part and parcel of the requirement to state that, "[i]f we charged for embalming, we will explain why below." The regulation does not make sense otherwise, especially given its expressly stated purpose of requiring funeral providers to provide certain information to customers so as to prevent their charging for embalming without valid authorization. See 16 CFR § 453.5(b) (express statement of purpose of regulation). Under petitioner's proposed interpretation, the regulation would allow funeral providers to misrepresent to customers that they will provide an explanation, while not providing one. If the words "If we charged for embalming, we will explain why below" are included but not followed by an explanation, a customer could logically conclude that he or she was not charged for embalming. Being misleading in that way is exactly the type of conduct that the regulation seeks to prevent. We conclude that section 453.5(b) requires the funeral provider to include certain form language about charging for embalming in the SFGSS and then, if charging for embalming, write the explanation below the form language.
The only published federal opinion on point of which we are aware is in agreement with the board's interpretation. See F.T.C. v. Hughes , 710 F.Supp. 1524, 1527 (ND Tex. 1989) ("[A]lthough Hughes included the disclosure language on one of his pre-printed pre-need contract forms, DHFC charged for embalming on two such contracts without providing the written explanation required by the *201 disclosure. * * * This omission is also a § 453.5 violation."); see also Complying with the Funeral Rule , Federal Trade Commission, at 1 (Apr. 2015) ("The form should leave enough space for you to explain the reason for embalming. You should enter this information on the [SFGSS] before giving it to the customer.").[1]
We reject petitioner's first assignment of error.
III. SECOND ASSIGNMENT OF ERROR
In its second assignment of error, petitioner argues that the board's findings regarding petitioner's violation of various state statutes and administrative rules with respect to Decedent G are not supported by "substantial evidence." Because this matter was decided on summary determination, we understand petitioner to argue that the uncontroverted evidence does not support the board's legal conclusions. Again, we review the grant of summary determination for legal error. Nacey , 287 Or.App. at 231, 401 P.3d 275.
Petitioner's arguments relate to three general categories of violations: (1) failing to implement or follow through on contractual obligations, (2) making false or misleading statements, and (3) failing to provide requested documents and information to the board and cooperate with its investigation.
*792 With respect to the second and third categories, upon review of the record, we reject petitioner's arguments without written discussion.
As for the first category, the board concluded that petitioner committed six violations of OAR 830-030-0090(1)(b) with respect to Decedent G. That administrative rule requires a licensed funeral provider to "[i]mplement and follow through with contractual arrangements with the person with the legal right to control final disposition." The six violations identified in the board's final order are: (1) an error in G's memorial folder; (2) failing to play the entire celebration of life CD during G's service; (3) failing to broadcast G's *202 service via a real-time web stream; (4) errors on the death certificate; (5) failing to order G's Thumbies; and (6) failing to engrave G's urn.
Petitioner argues that most or all of its failures regarding Decedent G were "mistakes and technical errors" and thus, in petitioner's view, not violations of OAR 830-030-0090(1)(b). Petitioner identifies no legal basis, however, to interpret the rule as excluding "mistakes and technical errors." OAR 830-030-0090(1)(b) makes it a violation for a funeral provider to fail to "[i]mplement and follow through with contractual arrangements with the person with the legal right to control final disposition." The rule contains no requirement of intentional failure, recklessness, or even negligence. Nor is there any exception for technological failures, such as those involving CD players and web streaming. Even if petitioner's shortcomings were a series of entirely innocent mistakes, the board would not have erred in concluding that, as a result of those mistakes, petitioner failed to implement and follow through with its contractual obligations to Fox regarding funeral services for Decedent G. That is, it did not fulfill the contract as agreed. "Where, as here, the agency's plausible interpretation of its own rule cannot be shown either to be inconsistent with the wording of the rule itself, or with the rule's context, or with any other source of law, there is no basis on which this court can assert that the rule has been interpreted 'erroneously.' " Don't Waste Oregon Committee v. Energy Facility Siting Council , 320 Or. 132, 142, 881 P.2d 119 (1994). We reject petitioner's second assignment of error.
Affirmed.

The FTC guidelines state that they "represent the FTC staff's view of what the law requires" and "are not binding on the Commission." Complying with the Funeral Rule at 1. The board did not cite the guidelines, and we agree with petitioner that they are not law. At the same time, petitioner describes them as "useful tools." We note only that the guidelines are consistent with the board's interpretation of the rule.