Argued and submitted September 6, 1984, reversed and remanded February 12,
reconsideration denied April 16, 1985

SHAHTOUT,
*Petitioner on Review,*

*v.*

EMCO GARBAGE COMPANY, INC. et al,
*Respondents on Review.*

(A8110-06373; CA A28635; SC S30764)

695 P2d 897

David J. Sweeney, Portland, argued the cause and filed briefs for petitioner on review. With him on the briefs were

Mark B. Weintraub and Gilbertson, Brownstein, Rask, Sweeney, Kerr & Grim, Portland.

Jas. Jeffrey Adams, Portland, argued the cause and filed briefs for respondent on review. With him on the briefs were William H. Mitchell and Mitchell, Lang & Smith, Portland.

LINDE, J.

**LINDE, J.**

Plaintiff was injured when defendant's truck backed up and struck her, and she sued for damages. A jury found that defendant was not negligent. On appeal, plaintiff claimed that the trial court made erroneous rulings concerning the truck's lack of an alarm device to signal when the truck was to be backed. The Court of Appeals affirmed without opinion. We allowed review to consider the proper treatment of a safety regulation relating to such signals.

The regulation is OAR 437-56-095(2), a rule promulgated by the Workers' Compensation Department under the Oregon Safe Employment Act, ORS 654.001 to 654.295, in order to assure employees of safe and healthful working conditions. ORS 654.003, 654.025. The rule provides:

> "(1)   All vehicles shall be equipped with an audible warning device which can be clearly heard above the surrounding noise in the vicinity of the vehicle.
>
> "(2)   Vehicles with obstructed view to the rear shall be equipped with a reverse signal alarm audible above the surrounding noise level, unless:
>
> "(a)   The vehicle is backed only when an observer signals that it is safe to do so; or
>
> "(b)   The vehicle operator first verifies that no person is in the path of the reverse travel, or is in position to enter it unobserved."

Plaintiff claims that violation of this rule constitutes "negligence per se," or that the existence of the rule at least was admissible so that noncompliance could be considered as evidence of negligence.

## I.   "NEGLIGENCE PER SE."

In considering the effect of a governmental regulation in actions for damages, it is important at the outset to distinguish between liability for damages based on violation of the rule and the significance of such a violation for common law liability. *See Bob Godfrey Pontiac v. Roloff,* 291 Or 318, 630 P2d 840 (1981) (majority and concurring opinions). A law that is designed to protect some or all persons against a particular risk of harm may expressly or impliedly give persons within the protected class a right to recover damages if noncompliance with the law results in harm of the kind the law seeks to prevent. *See, e.g., Nearing v. Weaver,* 295 Or 702, 670

P2d 137 (1983). The basis of such claims ordinarily is not "negligence per se;" whether they involve negligence at all depends on whether this is a term of the law involved. *See Watzig v. Tobin,* 292 Or 645, 655-58, 642 P2d 651, 658-59 (1982).

■ ■ The phrase "negligence per se" can apply only to cases brought on a theory of liability for negligence rather than liability grounded in obligations created by statute. Even when a statute neither expressly nor impliedly gives a person injured by its violation any claim for damages, that person may have such a claim under existing common-law theories, based on negligence or on something else, to which the statutory violation may be relevant. Recently, for instance, we held that an employer's violation of an anti-discrimination law which does not itself provide for civil damages could provide the element of wrongfulness in a common-law claim of wrongful discharge. *Holien v. Sears,* 298 Or 76, 689 P2d 1292 (1984).

■ Of course, a plaintiff may assert both statutory and common-law theories of liability on the same facts. *See Nearing v. Weaver, supra,* 295 Or at 708, 670 P2d at 141. In a negligence case, the plaintiff must show that defendant did not meet an applicable standard of due care under the circumstances. When a plaintiff (or a defendant seeking to prove negligence on plaintiff's part) invokes a governmental rule in support of that theory, the question is whether the rule, though it was not itself meant to create a civil claim, nevertheless so fixes the legal standard of conduct that there is no question of due care left for a factfinder to determine; in other words, that noncompliance with the rule is negligence as a matter of law. This court long has held that violations of statutory safety rules by themselves provide the element of negligence with respect to those risks that the rules are meant to prevent, at least unless the violator shows that his conduct in fact did not violate the rule under the circumstances. *Barnum v. Williams,* 264 Or 71, 504 P2d 122 (1972); *Peterson v. Standard Oil Co.,* 55 Or 511, 106 P 337 (1910).[1]

---

[1] The court has described the particular phrasing in *Barnum v. Williams,* 264 Or 71, 504 P2d 122 (1972), as a stage in a process of "much vacillation." *Weitzel v. Wingard,* 274 Or 185, 189, 546 P2d 121, 123 (1978). *See also* Vetri, *Tort Markings: Chief Justice O'Connell's Contributions to Tort Law,* 56 Or L Rev 235, 243-45 (1977).

The present action is based only on common-law negligence. Plaintiff first claims that OAR 437-56-095 required defendant's truck to be equipped with audible reverse signals, and that the lack of such signals in violation of the rule was negligence per se. Defendant responds that OAR 437-56-095 exists exclusively for the protection of defendant's employees and cannot be invoked by plaintiff, and that the requirement is not mandatory in any event. Defendant cites *Rich v. Tite-Knot Pine Mill,* 245 Or 185, 421 P2d 370 (1966), and *Davis v. Portland General Electric,* 286 Or 195, 593 P2d 1135 (1979).

In *Rich,* plaintiff was injured by machinery in a sawmill where he sought to work, and he sued for damages under the Employers' Liability Act or common-law negligence. The court stated that the safety codes promulgated by the Workers' Compensation Board were intended for the protection of employees and therefore were limited in application to employees.[2] In *Davis,* an injured worker sued a third party, which defended in part by showing that plaintiff's employer had violated a safety code. In holding the evidence admissible, the court explained *Rich* as stating a rule of "relevancy" with respect to evidence of the safety violation.

We think the question deserves further analysis beyond the brief statements in *Rich* and *Davis.* Those decisions merely recited that the legislature authorized safety rules under ORS 654.025 for the protection of employees. That is true, and it follows that they afford plaintiff no basis

---

In cases involving traffic regulations, the court has recognized that there are situations where it is not "unreasonable" to depart from the strict terms of the regulations; *i.e.,* in which the law contemplates that noncompliance would be excused under the circumstances. No such issue arises in cases in which a safety law requires strict compliance without exceptions. The rule of liability for harm resulting from noncompliance with such safety regulations in this state dates at least from *Peterson v. Standard Oil Co.,* 55 Or 511 at 522, 106 P 337 at 341, (1910), where the court wrote:

> "* * * [W]here the laws of the State for the protection of the public have prescribed that certain precaution shall be observed in the labeling of kerosene and distillates, such requirements constitute a legislative declaration of the minimum of care necessary under the circumstances, and that a less degree is negligence as a matter of law, and that the pleading and proof necessary in case of injury arising under such circumstances need only show the breach of the statutory requirement, the fact that such breach was the approximate cause of the inquiry, and the damages sustained thereby."

[2] For the same reason, the codes have been held not to set a standard of contributory negligence for employees. *See Rice v. Hyster Co.,* 273 Or 191, 204-05, 540 P2d 989, 995 (1975), citing prior cases.

to argue for recovery grounded in a statutory violation. But it does not follow that the safety rule is irrelevant to the determination of due care in a case grounded in common-law negligence. That confuses the question of the concern giving rise to adoption of a rule, here the safety of workers, with the question whether the standard imposed by the rule is one peculiar to risks of the workplace or is intended to protect workers against risks that they share with others. If the risk is common to workers and other persons, and the government has determined that the risk calls for a mandatory safeguard, it is difficult to argue that this determination has no relevance when someone suffers the kind of injury that the safeguard was meant to prevent.

Omission of a required safeguard such as an audible "reverse signal alarm" on a vehicle would fall below a mandatory standard of care and thus establish "negligence per se" toward any victim if the requirement were enacted by the legislature or if authority to promulgate it for general public safety were delegated to the Motor Vehicles Division. *Cf.* ORS 483.050 and ORS 483.436 to 483.440 (delegating certain authority with respect to vehicle lights). If a rule promulgated by the director of the Workers' Compensation Department does not have the same effect, it is because the legislature has not given that department responsibility for vehicle safety standards required to protect the general public.[3] Rather, ORS 654.003 states that the purposes to be accomplished by the department's safety standards are to assure workers of safe and healthful working conditions, to preserve human resources, and to reduce the economic burdens of lost production, wage losses, medical expenses, and compensation payments, as well as human suffering. The legislature did not direct the department, in setting standards for these purposes, to take account of the cost of consequential civil liability toward other parties; if anything, the statute implies that safeguards for workers are not to be compromised by such considerations. It therefore is quite possible that the director

---

[3] The department consists of the Workers' Compensation Board, the director, and all their assistants and employees. ORS 656.708, 654.005(3). The general authority to make rules and establish standards is vested in the Board and the director. ORS 654.025(2). ORS 654.035 delegates to the director authority "by general or special orders, or by regulations, rules, codes or otherwise" to declare and prescribe safeguards and practices "well adapted" to render employment safe and healthful and to "fix" various standards and prescribe and enforce reasonable orders for this purpose.

would require safety equipment in order to protect workers that the legislature or any agency with a wider directive would not deem necessary to protect the world at large. With respect to motor vehicles, in fact, the legislature has enacted laws governing lights, ORS 483.402 to 483.442, including stop lamps and turn signals, ORS 483.407, and warning horns, ORS 483.446, but these do not require reverse warning signals.

■     The circuit court therefore did not err in ruling that noncompliance with OAR 437-56-095(2) would not establish defendant's negligence as a matter of law.

## II.   RELEVANCE OF THE SAFETY RULE.

■     Plaintiff's second claim is that the trial court erred in not allowing the jury to consider the safety rule requiring reverse warning signals at all. The ruling and the assignment of error are phrased in terms of allowing the rule to "come into evidence," apparently referring to a practice of offering safety rules in this way. Governmental safety regulations, however, are law, unlike safety standards or usages of private trades or nongovernmental entities. Such rules of law are to be judicially noticed. OEC 202. Because they are laws, the question is not whether they are evidence of a fact but rather what bearing they have on the governing standard of conduct.

■     As set out above, safety rules adopted by the Workers' Compensation Department do not themselves fix a standard of due care for liability toward persons other than employees. In pursuit of its statutory assignment to protect workers in the workplace, the department may safeguard against job-related risks beyond those needed to meet any foreseeable risks to other members of the public. But that may not be true of every such requirement. Some safety rules may address risks faced by employees in common with other persons. If the rule is mandatory, compliance with it is a duty imposed by law and violation is a breach of that duty; a contention that it is a duty toward an employee but not toward another person injured in consequence of the violation merely begs the question for decision in each case. *Nylander v. State of Oregon,* 292 Or 254, 257-59, 637 P2d 1286, 1287-89 (1981).

■     Whether one of the department's safety rules bears on the issue of due care toward a nonemployee depends on the nature of the requirement, the place and circumstances in

which it applies, and the type of risk it is meant to prevent. A rule may be designed to safeguard against the cumulative effects of conditions in the workplace to which only a worker is exposed for any length of time. In a mill or factory, it generally is the operator of a machine and those obliged to work near it who need the protection of safety guards and controls. *Rich v. Tite-Knot Pine Mill, supra,* for instance, involved safety codes for machinery and operations that would be a constant danger to workers but rarely to anyone else. If a chemical that is regulated to protect workers' skin shows up as a factor in a fire which injures nonemployees, noncompliance with the regulation would have little bearing on the due care to avoid fires. On the other hand, many employees work with members of the public in workplaces shared with members of the public, for instance in services such as hospitals or schools, retail trade, or transportation. A safety rule promulgated to protect such employees may well be designed to take due precautions against risks that face the employee in common with those among whom he or she works. If so, the rule would have bearing also on due care toward nonemployees.

In order to decide whether a safety rule should be considered by a factfinder, therefore, a trial court must first determine its purpose and the nature and circumstances of the risk to which the rule is addressed, particularly whether the department contemplated a risk peculiar in nature or gravity to an employee's position in the workplace or a risk shared with nonemployees. If those matters are disputed, it may be necessary to examine the background of the department's adoption of the rule. They are not, however, a question of fact on which to take evidence.

Nor, as stated above, is the rule itself evidence. The role of the rule is not to show what in fact happened nor what experts or others engaged in activities like those that caused the injury consider the proper means to avoid it. If the safety rule is one that may be considered at all under the foregoing test, the jury (or judge) may take this governmentally pre-scribed safeguard into account in deciding the issue of due care. Plaintiff may argue that the government has adopted the rule as an obligatory safeguard for employees in the kind of situations and against the kind of risk that led to plaintiff's injury. Defendant, of course, may argue that the safeguard for

employees exceeds the ordinary standard of due care considering the nature of the risk and the foreseeability of injury. The court may explain the governmentally prescribed safeguard to the jury in an instruction that the jury may consider the safeguard in determining whether the defendant exercised due care. Because a safety rule is not "evidence," such an instruction is not a comment on evidence.

In the present case, defendant contends that the rule in question, OAR 437-56-095(2), is not mandatory because it requires a reverse signal alarm only in the alternative to other safeguards. The rule, as quoted above, states that the covered vehicles shall be equipped with such an alarm *unless* the vehicle is backed only when an observer signals that it is safe to do so or the driver first verifies that no one is in the path of the reverse travel or in a position to get there unobserved.

It is correct that this rule does not impose an absolute obligation to place reverse signal alarms on all vehicles that have an obstructed rear view. The Workers' Compensation Department has not determined that safety requires such equipment, so long as the operator takes the other precautions described in the rule. If in this case there was an observer who signaled that it was safe to back the truck, or if the driver first verified that no one had stepped or was in a position to step behind the truck, the rule would have no application and should not be considered by the factfinder on the issue of due care. If those precautions were not taken, however, the lack of audible signals would be unexcused and the rule could be taken into account.

The decision of the Court of Appeals is reversed and the case is remanded to the circuit court for further proceedings.