Argued and submitted February 26, reversed and remanded May 28, 1997

Kari L. HAGAN,
Personal Representative for the Estate
of Kenneth S. Hagan, Deceased,
*Appellant,*

*v.*

GEMSTATE MANUFACTURING, INC.,
an Idaho corporation,
*Respondent,*

*and*

NORTHWEST TRUCK SALES, INC.,
an Oregon corporation;
and John L. Jersey & Son, Inc.,
an Oregon corporation,
*Defendants.*

(9311-07570; CA A90494)

939 P2d 141

W. Eugene Hallman argued the cause and filed the briefs for appellant.

Barbara L. Johnston argued the cause for respondent. With her on the brief were Larry A. Brisbee and Brisbee & Stockton.

Before Deits, Presiding Judge, and De Muniz and Haselton, Judges.

DEITS, P. J.

## DEITS, P. J.

Plaintiff, the personal representative of the decedent Kenneth S. Hagan (Hagan), brought this action, alleging products liability and negligence claims, against defendant Gemstate Manufacturing, Inc. (defendant).[1] Defendant is the manufacturer of an attached tiltbed truck trailer which Hagan's vehicle struck from the rear, causing his death. The action was tried to a jury, which found that defendant was not liable. Plaintiff appeals from the resulting judgment, and we reverse and remand.

We quote the pertinent portions of the summary of facts as set forth in plaintiff's brief and accepted by defendant:[2]

"On November 29, 1991, Kenneth Hagan was driving his Ford Escort down N.E. Sandy Blvd. in Portland, when he rear-ended a trailer being operated by John L. Jersey & Son and manufactured by Gemstate Manufacturing. The rear of the trailer is equipped with a 'double bevel' coming to a point. There are no bumpers or barriers on the trailer.
\* \* \*

"Kenneth Hagan's vehicle underrode the trailer, causing the v-shaped point of the rear of the trailer to penetrate through the occupant space of the car and kill the driver.

"The trailer in question had a configuration of 35 inches from the rear-most portion of the trailer to the ground. The rear of the trailer slanted downward until it reached 30 inches from the ground within 24 inches from the extreme rear of the trailer.

"The trailer did not have any underride devices."

The focus of the dispute between the parties is the provision of the Federal Motor Carrier Safety Regulations

---

[1] Neither of the other defendants is a party to this appeal, and we refer to Gemstate only as "defendant."

[2] In this and other respects, the parties have approached their arguments by responsively defining areas of agreement and disagreement, and then devoting their energies to a concise and effective presentation of their positions, rather than to unduly contentious presentations of the kind that we sometimes see. The approach that the parties have followed here is both helpful to the court and good advocacy.

codified at 49 CFR § 393.86 (the rule). It provides, in material part:

> "Every motor vehicle, except truck-tractors, pole trailers, and vehicles engaged in driveaway-towaway operations, the date of manufacture of which is subsequent to December 31, 1952, which is so constructed that the body or the chassis assembly if without a body has a clearance at the rear end of more than 30 inches from the ground when empty, shall be provided with bumpers or devices serving similar purposes which shall be so constructed and located that:

> "(a)  The clearance between the effective bottom of the bumpers or devices and the ground shall not exceed 30 inches with the vehicle empty;

> "* * * * *

> "(d)  The bumpers or devices shall be located not more than 24 inches forward of the extreme rear of the vehicle; and

> "The bumpers or devices shall be substantially constructed and firmly attached. Motor vehicles constructed and maintained so that the body, chassis, or other parts of the vehicle afford the rear end protection contemplated shall be deemed to be in compliance with this section."[3]

Under 49 CFR § 393.1, the quoted rule and related ones directly govern the conduct of employers and employees who operate commercial motor vehicles. These rules do not directly regulate vehicle manufacturers. Accordingly, plaintiff does not proceed on the theory that defendant's alleged noncompliance with the requirements of the rule constitutes negligence *per se* or, without more, conclusively establishes liability on either claim. However, plaintiff argues that the rule is nevertheless *relevant* in determining whether defendant met the applicable standard of care. Defendant agrees, and so do we. *See Hansen v. Abrasive Engineering and Manufacturing*, 317 Or 378, 384-87, 856 P2d 625 (1993).

The parties disagree about *what* the rule requires, *i.e.*, its legal meaning, and about the correctness of the

---

[3] It is undisputed that trailers of the kind in question are among the vehicles that are subject to the rule.

approach that the trial court followed in apprising the jury about the existence of the rule and the way in which the jury could or should apply it. The court did not allow expert testimony concerning either the meaning of the rule or whether the trailer complied with it. The court also disagreed with plaintiff's assertion that it should instruct the jury as a matter of law about the meaning of the rule and should do so in accordance with the interpretation contained in three instructions requested by plaintiff.[4]

Plaintiff also contended—and the trial court again disagreed—that, because the material facts were uncontroverted, the court should have applied the rule as so interpreted to the facts and granted a "partial directed verdict" for plaintiff as to whether the design of the trailer and defendant's conduct satisfied the rule's requirements.

Rather than following the course sought by plaintiff, the only communication that the court made to the jury regarding the rule was to read its text to the jurors and to apprise them that, "in determining whether or not the trailer

---

[4] The instructions state, respectively:

"Requested Jury Instruction No. 8:

"I have explained to you that the jury is the sole judge of the facts. Interpreting the law and deciding issues of law, on the other hand, is the court's function. In carrying out my role to decide questions of law, the Court has determined, and I so instruct you, that the Gemstate trailer involved in this case did not meet the applicable federal standard, in that it was more than 30 inches from the ground at the end, and it was not designed or manufactured with bumpers or similar devices, and did not otherwise afford the protection against vehicle underride contemplated by the federal regulation.

"Requested Jury Instruction No. 7:

"As used in the federal regulation, bumper or similar device, or the rear end protection contemplated, means a structure designed to prevent a vehicle or object from underriding the rear of a motor vehicle.

"Requested Jury Instruction No. 18:

"I instruct you that the regulation applicable to the TD42T trailer manufactured and sold by Gemstate required that either one of two conditions be met:

"1) The trailer must be provided with a bumper or similar device which was substantially constructed and firmly attached, or

"2) The trailer must be constructed and maintained so that the body, chassis or other parts of the vehicle afforded protection against the vehicle underride at a location not more than thirty inches above the ground when empty and not more than twenty four inches from the rear of the trailer."

was defective in design, you may consider whether there was compliance with this regulation." Plaintiff assigns error to the court's denial of its motion for a partial directed verdict and to the court's refusal to give the three requested instructions.

Defendant contends that the court committed no reversible error. Although defendant's arguments are more detailed, and will be addressed in greater detail below, it suffices for now to summarize the two major themes. First, defendant argues, the rule's outermost significance here was as *evidence* pertaining to the standard of care, not as a *legal* determinant, and the court therefore did not err by declining plaintiff's requests to give instructions or make other legal rulings based on the substance of the rule. Defendant's second point is that, even if *any* comment by the court on the meaning of the rule would have been appropriate, defendant's rather than plaintiff's understanding is the correct view of the rule's meaning and, under defendant's understanding, it and the trailer complied with the rule. Accordingly, defendant contends that the court's refusal to grant plaintiff's motion or to give her requested instructions to the effect that the trailer did *not* comply with the rule was not reversible error.[5] If defendant's second argument were right, it would dispose of the appeal without more. We therefore turn to it first.

In her opening brief, plaintiff argues that, to comply with the rule as properly interpreted, a vehicle must either have a rear end height of 30 inches or less or be equipped with the bumpers or other devices that the rule describes. Defendant agrees that the trailer was not equipped with bumpers or other devices. It contends, however, that plaintiff's understanding of the rule does not take into account its last sentence, which implies that "the rear end protection contemplated" can be achieved in ways other than those specifically mentioned in the rule. As noted above, the rule includes the provision:

---

[5] Defendant describes this and a related contention as a harmless error argument. We think that it is more accurate to say that, if the requested instructions were legally incorrect, the refusal to give them was not error of any kind. For purposes of the issue here, however, that nomenclature is not significant.

"The bumpers or devices shall be substantially constructed and firmly attached. Motor vehicles constructed and maintained so that the body, chassis, or other parts of the vehicle afford the rear end protection contemplated shall be deemed to be in compliance with this section."

Defendant reasons that the "only possible referent" of the word "protection" in the last sentence "is the set of dimensions" delineated elsewhere in the rule and that, because of the frontward slope of the trailer, it came within 30 inches of the ground at a point 24 inches or less from the end, notwithstanding the absence of bumpers or similar devices. Therefore, in defendant's view, the "protection contemplated" was sufficiently provided.

Plaintiff responds that defendant misperceives the meaning and requirements of the rule generally and of the phrase "protection contemplated" in particular. Plaintiff relies on the history of the rule, which shows that its purpose is to prevent "underride" of the kind that occurred here, in which a vehicle that strikes the rear of a regulated vehicle moves beneath the bottom of the regulated vehicle and collides with its back or with structures in its undercarriage. Plaintiff maintains that, given the language and history of the rule, the bumpers or similar devices that it describes are meant to serve a protective purpose in themselves, quite apart from the effect that they may have on the height and other dimensional factors that defendant emphasizes. Consequently, plaintiff contends that the term "protection contemplated"

"requires that vehicles not equipped with bumpers or devices serving a similar purpose must be constructed in such a way that they provide underride protection equivalent to that provided by the bumpers or devices described in the regulation."

The essence of defendant's understanding of the rule is that the *only* purpose of the required bumpers is to meet a 30-inch height limitation at a point two feet from the rear of the vehicle, and that no bumpers are necessary if the vehicle satisfies that height limitation without them. Under that view, a trailer that has no bumpers, but which measures slightly less than 30 inches in height at all points beginning

two feet inward from its end, would afford the "protection contemplated" by the rule, even though the part or parts of a colliding vehicle that could fit beneath and underride the rear of the trailer could continue to underride the trailer's entire length.

We are not persuaded by defendant's understanding of the rule. We agree with plaintiff that the purpose of the bumpers that the rule requires is not simply to maintain the height of the vehicle at or around 30 inches, but is to impede or obstruct the underride motion from starting or continuing. The reason that the rule becomes applicable to a vehicle in the first place is *because* it has a rear height of 30 inches or more, and therefore fosters a risk of underride. Given that, the object of the rule's bumper requirement is not to reduce the height to a level fractionally less than 30 inches at a point a short distance from the rear; its purpose is to create a physical barrier against the movement that the 30-inch height allows. A design that omits bumpers or similar devices and, instead, simply achieves a height of 30 inches or slightly less at the 24-inch horizontal point does not suffice as a substitute for the "protection contemplated" by the bumper requirement. Rather, it facilitates the danger which that requirement is aimed at reducing.[6]

We conclude that plaintiff's view of the rule's meaning is correct. The next question is whether the meaning of the rule was a matter about which the court should have instructed the jury. Insofar as pertinent here, there are three categories of cases in which the meaning of statutes or rules can be relevant in determining liability. Oregon case law has already defined the respective roles of court and jury in two of the categories. This case falls under the third.

The first category involves cases where the theory of liability is negligence *per se*.[7] That theory is available when a

---

[6] The circumstances here do not require that we interpret the term "protection contemplated" more comprehensively than we have. In the interest of clarity about what we have said, however, we note that our conclusion would not necessarily be the same if the question were, for example, whether a tiltbed trailer that had no bumpers, but that declined to a height of 15 inches within two feet of its rear, could be deemed to provide the protection contemplated by the rule.

[7] For purposes of delineating the categories, we use negligence terminology. By doing so, we do not suggest that the analysis that applies here is inapplicable to

statute or rule directly regulates the defendant's conduct, the case turns on "risks that the rules are meant to prevent," and the plaintiff is among those that the statute or rule is designed to protect. *Shahtout v. Emco Garbage Co.*, 298 Or 598, 601-02, 695 P2d 897 (1985). In such situations, "noncompliance with the [statute or] rule is negligence as a matter of law," without regard for whether the defendant met any common-law standard of care. *Id.* at 601. When the plaintiff may properly invoke the negligence *per se* doctrine, the meaning of the statute or rule that the defendant has assertedly violated is treated as a question of law, about which the court must instruct the jury. *James v. Carnation Co.*, 278 Or 65, 562 P2d 1192 (1977).

The second category is exemplified by *Shahtout.* It differs from the first in that the statute or rule, although a direct regulation of the defendant's conduct, is aimed at the protection of persons in a status other than the plaintiff's. In *Shahtout*, the workers' compensation rule in question required employers to have audible backup warning devices on vehicles. The plaintiff, who was not an employee of the defendant, was injured by a business vehicle belonging to the defendant, which was not equipped with the required device and which backed into the plaintiff. The Supreme Court held that the rule was aimed directly at the protection of employees rather than the public at large, and that the plaintiff therefore could not pursue a negligence *per se* theory. However, the court further concluded that safety rules of the kind in question could "have bearing * * * on due care toward nonemployees." 298 Or at 603. The court then said:

> "In order to decide whether a safety rule should be considered by a factfinder, therefore, a trial court must first determine its purpose and the nature and circumstances of the risk to which the rule is addressed, particularly whether the [promulgating agency] contemplated a risk peculiar in nature or gravity to an employee's position in the workplace or a risk shared with nonemployees. If those matters are disputed, it may be necessary to examine the

---

plaintiff's products liability claim. It is also unnecessary, for the limited purposes of the comparison we are making, to differentiate between "statutory torts" and negligence *per se.*

background of the [agency's] adoption of the rule. They are not, however, a question of fact on which to take evidence.

"Nor, as stated above, is the rule itself evidence. The role of the rule is not to show what in fact happened nor what experts or others engaged in activities like those that caused the injury consider the proper means to avoid it. If the safety rule is one that may be considered at all under the foregoing test, the jury (or judge) may take this governmentally prescribed safeguard into account in deciding the issue of due care. Plaintiff may argue that the government has adopted the rule as an obligatory safeguard for employees in the kind of situations and against the kind of risk that led to plaintiff's injury. Defendant, of course, may argue that the safeguard for employees exceeds the ordinary standard of due care considering the nature of the risk and the foreseeability of injury. The court may explain the governmentally prescribed safeguard to the jury in an instruction that the jury may consider the safeguard in determining whether the defendant exercised due care. Because a safety rule is not 'evidence,' such an instruction is not a comment on evidence." *Id* at 605-06.

*See also Scovill v. City of Astoria*, 324 Or 159, 173-74, 921 P2d 1312 (1996).

■　　The third category involves cases, like the present one, where the statutory or regulatory provision does not directly regulate the defendant, but does regulate the product or consequences of the defendant's conduct or activity in some way.[8] The case that exemplifies that category, *Hansen*, 317 Or 378, is highly similar to this case. The plaintiff there was injured by a sanding machine that the defendant designed and manufactured. The machine did not contain certain safety features that were required by federal and state occupational safety regulations applicable to employers. The court concluded that, although the provisions did not *regulate* the defendant manufacturer, they were nevertheless relevant evidence bearing on whether the defendant met the applicable standard of care. The court explained why the governmental (OOSHC and OSHA) rules, as well as certain

---

[8] Defendant acknowledges that, realistically, "a manufacturer will not be able to market his vehicles or trailers if they do not comply," even though the "manufacturer is not directly subject to those regulations."

advisory industry (ANSI) standards, were relevant for that purpose:

"Determination of the appropriate standard of care is an issue of law. In this case, both parties agree that the general 'reasonable person' standard of care applies. Whether a defendant has met that standard of care is an issue of fact, to be determined by the jury. Thus, evidence pertaining to whether defendant's conduct was reasonable is relevant to the jury's determination of whether defendant met the reasonable person standard of care.

"* * * * *

"Although violation of an industry custom does not constitute negligence *per se*, it may be shown in order to establish whether a party has met a standard of care to which the party is required to conform. 'It is a test of negligence, but not a conclusive or controlling test.' *Mennis v. Cheffings [et al]*, 233 Or 215, 220, 376 P2d 672 (1962) (pre-OEC case).

"The ANSI advisory standards provide some evidence of the custom in defendant's industry and, therefore, are relevant to the jury's consideration of whether defendant met the standard of care. We find no error in the admission of the ANSI standards into evidence.

"Defendant next contends that the Court of Appeals erred in holding that evidence relating to the OOSHC and OSHA safety rules [was] improperly excluded at trial. Defendant argues that, because it is not an employer subject to the safety requirements contained in those two sets of rules, the court misapplied the rule of law from *Shahtout v. Emco Garbage Co.*, 298 Or 598, 695 P2d 897 (1985), that allows for use of certain safety regulations in negligence cases. Plaintiff responds that, because the rules at issue here pertain to proper guarding of the machine to ensure that workers do not sustain the type of injury that plaintiff sustained, the existence of OOSHC and OSHA rules governing the use of such machines in the employer's workplace is relevant to the issue of the standard of care that defendant should have exercised.

"* * * * *

"For the reasons that follow, we hold that the OOSHC and OSHA rules should have been admitted into evidence in

this case and that plaintiff's experts should have been allowed to rely on those rules in their testimony.

"This court has held that a 'manufacturer should have a duty of exercising care to avoid foreseeable harm to the users of [its] product.' *State ex rel Western Seed v. Campbell*, 250 Or 262, 270, 442 P2d 215 (1968), *cert den* 393 US 1093 (1969). In the present case, the jury was required to determine whether defendant's design and manufacture of its sanding machine fell below that standard of care. Defendant designed and manufactured its sanding machine for use by customers such as plaintiff's employer for use in a workplace governed by the OOSHC and OSHA rules. Thus, the OOSHC and OSHA rules are relevant, even though not binding on defendant, for exactly the same reasons that the ANSI standards are relevant, *i.e.*, because they pertain to the issue of whether defendant met the standard of care. Those *non-binding* rules are properly to be considered as evidence, similar to evidence of industry custom or trade practice, and are admissible because they are relevant to the jury's assessment of whether defendant complied with the standard of care.

"The use of standards such as the OOSHC and OSHA rules in tort cases has gained acceptance in recent years, even where a defendant manufacturer is not bound to those standards. Sometimes such standards are used by the defendant in a products liability case, either to shift the blame to the plaintiff's employer where the employer was not in compliance with the rules or to show that the defendant's product complied with the rules. It is also possible, however, for plaintiffs to use such rules in order to provide some evidence of whether the defendant met the standard of care due.

"We conclude that the OOSHC and OSHA rules may be relevant to tort claims even when a defendant is not bound by those rules, depending on the circumstances of the case. Under circumstances such as these, where the defendant is not bound by the OOSHC and OSHA rules, those rules should be treated the same as the ANSI standards; they provide some relevant information for consideration by the jury about whether the defendant met the standard of care due and are, therefore, admissible as evidence. The trial court erred in excluding that evidence." *Id.* at 384-87. (Caption, footnotes and some citations omitted; emphasis in original.)

■    The court in *Hansen* also distinguished the theory under which it held that the rules could be considered there from the theory that it had applied in *Shahtout*:

> "The admissibility of the OOSHC and OSHA rules is not based on the rationale from the *Shahtout* case. In *Shahtout*, the defendant was bound by the rules, and they were subject to judicial notice." *Id.* at 387 n 4.

However, the distinction is not fully explanatory. Federal and state regulations are generally subject to judicial notice, whether or not they are binding on a particular party. OEC 202. Moreover, *Shahtout* states that the rules in question there were not to be regarded as evidence at all, but were instead rules of law, 298 Or at 604-06, while *Hansen* pretty plainly says that the rules it addresses *are* evidentiary in nature.

Conversely, unlike *Shahtout*, *Hansen* does not deal expressly with the question of whether the safety rules that it considers can be appropriate subjects of interpretive instructions. However, *Hansen* does state that the determination of the standard of care is for the court, but that it is a jury question whether the standard has been met, and that the rules may be considered by the factfinder in determining whether the defendant has met the standard of care. Hence, *Hansen* indicates that the usual roles of the court and factfinder regarding questions of law and fact pertain in circumstances of the same general kind that are involved here.

Against the backdrop of that authority, plaintiff argues that the *meaning* of the rule is a question of law, about which the jury should have been instructed. Defendant answers that what the trial court did was all that it properly should have done under *Hansen*: It apprised the jury of the existence and substance of the rule and told the jury that it could consider the rule, along with the other evidence, in determining whether defendant had satisfied the standard of care. Because the rule was relevant to but not necessarily dispositive of that question, defendant suggests, all other matters pertaining to the rule were appropriately left to the jury.

Again, we agree generally with plaintiff. It is true that the rule does not *conclusively* establish the standard of care, nor does it contain an *exclusive* enumeration of the factors that the jury *may* consider in deciding whether the standard was met. It is also correct that it is ultimately for the jury to decide how much weight to accord the rule and defendant's compliance or noncompliance with it, in the light of the other evidence, in making the factual determination of whether defendant met the standard of care.

■     However, neither the fact that the rule is not independently conclusive, nor the fact that there are factual questions about and related to it, means that there cannot *also* be *legal* questions about the rule which, like questions of law generally, are appropriate subjects for instruction by the court. The rule is *both* evidence and law. It is evidence and has bearing on the factfinding process for the reasons expressed in *Hansen*; and, *ipso facto*, the federal regulation *is* a provision of law. The conclusion that follows is the same as in other cases where a statutory or regulatory provision is pertinent: Questions of law, *e.g.*, the meaning of the provision, are for the court to decide and to communicate to the jury through instructions, and questions of fact are for the jury to decide consistently with the court's legal instructions.[9]

The foregoing conclusions are fully consistent with *Hansen*, as well as with traditional concepts of the judicial and the factfinding roles. The confusing factor in the equation is *Shahtout*. The pertinent factual and legal questions in *Shahtout* and in *Hansen* differed in degree only rather than in kind. In both, the ultimate factual issue was whether the defendant had met the standard of care, and the legal provisions in the two cases were related to the factual question in the same *essential* way. The only difference of substance was that, in *Shahtout*, the more direct relationship of the regulation to the defendant's conduct arguably gave it greater potential weight than the rules in *Hansen* on the factual

---

[9] As illustrated by the parties' arguments and our earlier discussion of the subject, the meaning of the rule here is neither so simple nor so self-evident that a factfinder could be expected to discern the meaning without explanation, let alone without a prior legal determination by the court as to what the meaning and requirements of the rule are.

question of whether the defendant exercised reasonable care. Nevertheless, the court in *Shahtout* saw fit to draw a bright line between fact and law; indeed, it went so far as to say that the rule in question was not evidence at all[10] and, *therefore*, an instruction about the meaning of the rule would not be a comment on the evidence.

■ The court's analysis in *Hansen* was more straightforward. It held there that the regulations could have an evidentiary dimension and an evidentiary use. Nevertheless, the court also recognized that the usual roles of judge and jury applied, *e.g.*, although the rules could bear on the jury's factual assessment of whether the standard of care had been *met*, the *definition* of the standard of care was a legal question for the court. Similarly, the fact that the rule in this case plays the dual roles of evidence and law does not mean that it should be treated differently in its legal aspects from other questions of law. The meaning of statutes and regulations is a legal question about which courts should instruct juries. The trial court erred by not doing so here.

■ Defendant argues further that each of the three requested instructions that the court declined to give, *see* note 4, was in some way an inaccurate statement of the law. In each instance, however, defendant's contentions about the instructions rest on its understanding about the meaning of the rule, which we have rejected in our earlier discussion. The instructions that the court may be asked to give and/or should give on remand will necessarily depend on the evidence in the proceedings on remand. On the record before us, however, each of the requested instructions should have been given, and the failure to give instruction number 8 was particularly material in that it would have informed the jury that defendant's trailer violated the federal rule. We conclude that plaintiff was prejudiced by not having the jury instructed in accordance with her theory of the case and that the court's failure in that regard requires reversal.[11]

---

[10] The court also suggested in *Shahtout* that matters that are judicially noticeable are not evidence. While that proposition might have some debatable validity in some contexts, the context in *Shahtout* itself was one in which the judicially noticed rules were to be submitted to the jury as bearing on the ultimate fact.

[11] We do not suggest that the instructions on remand must necessarily duplicate the ones that were originally requested.

As noted, plaintiff also assigns error to the denial of her motion for what she describes as a "partial directed verdict" on the question of whether the trailer was in compliance with the rule. The denial of that motion was not error. Defendant's noncompliance with the rule is evidence that the jury may consider on both claims, but it does not conclusively resolve either claim or the question of liability under either claim as a matter of law. A peremptory instruction, such as requested instruction number 8, rather than a partial directed verdict, was the proper way of apprising the jury that the trailer did not comply with the rule as a matter of law.

Plaintiff argues that the error in failing to give her requested instructions affected and requires a remand on both the products liability and the negligence claims. It is unclear to us whether defendant specifically disagrees that that is the proper disposition if, as we have held, there was an error. In any event, we agree with plaintiff. The meaning of the rule was central to plaintiff's theory on both claims.

Reversed and remanded.