Argued and submitted September 9, 1998, decision of Court of Appeals affirmed, judgment of circuit court reversed and case remanded to circuit court for further proceedings May 20, 1999

Kari L. HAGAN,
Personal Representative for the
Estate of Kenneth S. Hagan, Deceased,
*Respondent on Review,*

*v.*

GEMSTATE MANUFACTURING, INC.,
an Idaho corporation,
*Petitioner on Review,*

*and*

NORTHWEST TRUCK SALES, INC.,
an Oregon Corporation;
and John L. Jersey & Son, Inc.,
an Oregon corporation,
*Defendants.*

(CC 9311-07570; CA A90494; SC S44447)

982 P2d 1108

536

Barbara L. Johnston, of Brisbee & Stockton, Hillsboro, argued the cause for petitioner on review. With her on the briefs was Larry A. Brisbee.

W. Eugene Hallman, Pendleton, argued the cause for respondent on review. With him on the briefs were James E. McCandlish, of Griffin, McCandlish, Portland, and William A. Gaylord of Gaylord & Eyerman, P.C.

Kathryn H. Clarke, Portland, filed a brief for *amicus curiae* Oregon Trial Lawyers Association.

Julie K. Bolt, of Martin, Bischoff, Templeton, Langslet & Hoffman LLP, Portland, filed a brief for *amicus curiae* Oregon Association of Defense Counsel. With her on the brief was Jonathan M. Hoffman.

Thomas W. Brown, of Cosgrave, Vergeer & Kester LLP, Portland, filed a brief for *amicus curiae* Truck Trailer Manufacturers Association.

Before Carson, Chief Justice, and Gillette, Van Hoomissen, Durham, Kulongoski, and Leeson, Justices.\*\*

LEESON, J.

---

\*\* Riggs, J., did not participate in the consideration or decision of this case.

## LEESON, J.

Plaintiff, the personal representative of the estate of the decedent, Kenneth S. Hagan (Hagan), brought this damages action against defendant Gemstate Manufacturing, Inc. (defendant) alleging common-law negligence and products liability.[1] The action followed Hagan's death in a collision with the rear-end of a tiltbed trailer that defendant had manufactured. A jury found defendant not liable. The Court of Appeals reversed and remanded to the trial court. *Hagan v. Gemstate Manufacturing, Inc.*, 148 Or App 192, 939 P2d 141 (1997). We allowed review and affirm the decision of the Court of Appeals.

The parties agree on the following facts:

"On November 29, 1991, Kenneth Hagan was driving his Ford Escort down N.E. Sandy Blvd. in Portland, when he rear-ended a trailer being operated by John L. Jersey & Son and manufactured by Gemstate Manufacturing. The rear of the trailer is equipped with a 'double bevel' coming to a point. * * *

"Kenneth Hagan's vehicle underrode the trailer, causing the v-shaped point of the rear of the trailer to penetrate through the occupant space of the car and kill the driver.

"The trailer in question had a configuration of 35 inches from the rear-most portion of the trailer to the ground. The rear of the trailer slanted downward until it reached 30 inches from the ground within 24 inches from the extreme rear of the trailer.

"The trailer did not have any underride devices." (Internal citations omitted.)

At trial, plaintiff moved for a "Partial Directed Verdict," arguing that, as a matter of law, the tiltbed trailer that defendant designed and manufactured did not comply with 49 CFR section 393.86,[2] a federal safety regulation that applies to the owner and operator of the trailer but not to the manufacturer.[3] Alternatively, plaintiff requested three "Special Requested Jury Instructions" about the requirements of

---

[1] Plaintiff also named Northwest Truck Sales, Inc., and John L. Jersey & Son, Inc., as defendants. Judgments of dismissal were entered for those defendants before trial. Our review involves only defendant Gemstate Manufacturing, Inc.

[2] The text of the relevant requested jury instruction is set out below.

[3] 49 CFR section 393.86 is set out in the text below.

49 CFR section 393.86. Defendant argued that plaintiff was not entitled to a partial directed verdict or to her requested jury instructions.

The trial court denied plaintiff's motion for a partial directed verdict. It reasoned that the jury was required to decide, as a matter of fact, whether the trailer complied with 49 CFR section 393.86. The trial court also declined to give plaintiff's requested jury instructions or otherwise to instruct the jury about the meaning of the regulation. Rather, the court read the text of 49 CFR section 393.86 to the jury and instructed it that, "in determining whether or not the trailer was defective in design, you may consider whether there was compliance with this regulation." As noted, the jury found defendant not liable.

On appeal, plaintiff assigned error to the trial court's denial of her motion for a partial directed verdict and to its refusal to give three of the jury instructions that she had requested. Plaintiff argued that interpreting the regulation was a question of law for the court. Defendant responded that the trial court properly refused to give plaintiff's requested jury instructions or to make other legal rulings based on the meaning of 49 CFR section 393.86 because, as applicable to this case, the regulation is merely evidence of the standard of care, not law. Alternatively, and assuming that the meaning of the regulation is a matter about which the court should have instructed the jury, defendant argued that its trailer complied with the regulation and that plaintiff's interpretation of the regulation, reflected in her proposed jury instructions, was incorrect.

The Court of Appeals held that the trial court did not err in denying plaintiff's motion for a partial directed verdict. It reasoned that, in this case, "[d]efendant's noncompliance with the [regulation] is evidence that the jury may consider on both claims, but it does not conclusively resolve either claim or the question of liability under either claim as a matter of law." *Hagan*, 148 Or App at 207. However, the Court of Appeals also held that the trial court erred in failing to instruct the jury on the meaning of 49 CFR section 393.86 and that all three of plaintiff's requested jury instructions accurately stated the law. *Id.* at 206. The Court of Appeals

held that the error prejudiced plaintiff because the jury was not instructed according to her theory of the case. *Id.* Consequently, it reversed and remanded. *Id.* at 207.

Resolving plaintiff's appeal required the Court of Appeals to determine whether, in this case, 49 CFR section 393.86 is evidence, law, or both. It held that the regulation is both evidence that has a bearing on the factfinding process and a provision of law. *Id.* at 205. As evidence, the regulation is admissible for the jury to consider in determining whether defendant met the standard of care in designing and manufacturing the trailer. As law, the regulation is subject to instruction from the court regarding its meaning. *Id.*

The Court of Appeals stated that its holding that, in this case, 49 CFR section 393.86 is both evidence and law is consistent with this court's decision in *Hansen v. Abrasive Engineering and Manufacturing*, 317 Or 378, 856 P2d 625 (1993). However, the court questioned whether *Hansen* is consistent with an earlier decision of this court, *Shahtout v. Emco Garbage Co.*, 298 Or 598, 695 P2d 897 (1985). *Hagan*, 148 Or App at 205-06. According to the Court of Appeals, *Shahtout* held that safety rules are to be regarded only as rules of law, but *Hansen* held that safety rules also "could have an evidentiary dimension and an evidentiary use." *Id.* at 206. The court also questioned whether the two cases are consistent regarding a judge's responsibility to instruct the jury about the meaning of a safety rule or regulation. *Id.* We allowed review to determine whether there is a conflict between *Shahtout* and *Hansen* and, if there is, to resolve it. We turn to an analysis of those two cases.

*Shahtout* was a negligence action. The plaintiff, a passerby, was struck by the defendant's truck as the truck backed up. The plaintiff sought damages, claiming that the defendant's violation of OAR 437-56-095(2), a safety rule requiring trucks to have an alarm device to signal when the truck was to be backed, was negligence *per se*. Alternatively, the plaintiff argued that the rule was relevant to the jury's determination of whether the defendant had met the applicable standard of care.

The Workers' Compensation Department had promulgated OAR 437-56-095(2) under the Oregon Safe Employment Act, ORS chapter 654. The rule was intended to assure safe and healthful working conditions for employees. Because the plaintiff was not the defendant's employee, this court rejected her negligence *per se* claim. As a nonemployee, the plaintiff in *Shahtout* was not within the class of persons that OAR 437-56-095(2) sought to protect. Consequently, although she suffered the type of injury that the rule was enacted to prevent and the rule governed the defendant's conduct toward its employees, the defendant's violation of the rule did not necessarily establish that the defendant had acted negligently toward the plaintiff.

The next question in *Shahtout* was whether OAR 437-56-095(2) nonetheless was relevant to the jury's determination whether the defendant had met the applicable standard of care. The court held that

> "[i]n order to decide whether a safety rule should be considered by a factfinder, * * * a trial court must first determine *its purpose and the nature and circumstances of the risk to which the rule is addressed,* particularly whether the department [that adopted the rule] contemplated a risk peculiar in nature or gravity to an employee's position in the workplace or a risk shared with nonemployees. If those matters are disputed, it may be necessary to examine the background of the department's adoption of the rule. [Those matters] are not, however, a question of fact on which to take evidence." *Id.* at 605 (emphasis added).

*Shahtout* thus holds that a jury may consider a relevant safety rule in determining whether a defendant met the applicable standard of care, and the court's opinion provides a framework for determining whether a rule is relevant in a particular case.[4]

*Hansen* was a products liability action. The plaintiff sought damages from the defendant for injuries he sustained

---

[4] Because OAR 437-56-095(2) permitted methods other than alarm signal devices to achieve its safety goal, the *Shahtout* court held that the rule might *not* be relevant under the circumstances presented there. Consequently, the court remanded the case to the trial court to allow the parties to present evidence of the relevance of the rule. *Shahtout,* 298 Or at 606.

while cleaning a sanding machine that the defendant had designed and manufactured. The plaintiff contended that his injuries were caused by the defendant's negligence in failing to incorporate machine safety features in the sanding machine consistent with safety rules promulgated under the Oregon Occupational Safety and Health Code (OOSHC) and the federal Occupational Safety Health Act (OSHA) and advisory standards promulgated by the American National Standards Institute (ANSI). Although the OOSHC and OSHA rules and the ANSI advisory standards did not regulate the defendant's conduct as the designer and manufacturer of the sanding machine, those rules and standards were intended to protect the plaintiff from the type of injury that he suffered.

The *Hansen* court held that, although the ANSI advisory standards and the OOSHC and OSHA rules were not binding on the defendant, they were benchmarks for what was considered reasonable conduct in the defendant's industry. Consequently, they provided "some relevant information for consideration by the jury about whether the defendant met the standard of care due and [were], therefore, admissible as evidence." *Hansen*, 317 Or at 387.

■ *Shahtout* and *Hansen* are not inconsistent. Both cases hold that *relevant* safety rules may be introduced as evidence at trial for the jury's consideration of whether a defendant met the applicable standard of care. *Shahtout*, 298 Or at 605; *Hansen*, 317 Or at 387. In deciding whether a rule is relevant, the trial court must examine the purpose, nature, and circumstances of the risk to which the rule is addressed.[5] *Shahtout*, 298 Or at 605. Although relevant safety rules are admissible, their function is not to help establish, as a matter of fact, what happened. *Id.* Rather, as explained above, relevant safety rules are admissible to provide some information about whether the defendant met the applicable standard of care. *Hansen*, 317 Or at 387. Although admissible for that purpose, government safety rules nonetheless are laws. *Shahtout*, 298 Or at 604. The meaning of a law is a matter for

---

[5] In this case, the parties agreed at trial on the applicable standard of care and that 49 CFR section 393.86 is relevant to the jury's determination of whether defendant met that standard. As defendant concedes, the trailer is subject to the regulation, and "a trailer manufacturer will not be able to market a trailer that an owner or operator cannot use in compliance with [it]."

the court to decide and communicate to the jury. *Cf. James v. Carnation Co.*, 278 Or 65, 72, 562 P2d 1192 (1977) (questions of statutory interpretation are decided by the court as a matter of law).

■■ Read together, *Shahtout* and *Hansen* support the Court of Appeals' holding that, in this case, 49 CFR section 393.86 is both evidence and law. Although the regulation does not help to show what happened when Hagan's car struck the rear of the trailer, it is evidence that the jury properly could have considered in determining whether defendant met the standard of care in designing and manufacturing the trailer. The regulation also is law, and it is the responsibility of the court to instruct on the law. The trial court's failure to instruct the jury on the meaning of 49 CFR section 393.86 was error.

■■ *Shahtout* and *Hansen* also support the Court of Appeals' holding that plaintiff was not entitled to a partial directed verdict on the ground that defendant failed to comply with the regulation. That is so because, even if defendant's trailer unquestionably had failed to comply with the requirements of 49 CFR section 393.86, that lack of compliance only would be evidence that the jury could consider in determining whether defendant met the standard of care in manufacturing the trailer. As this court explained in *NW Pac. Indem. v. Junction City Water Dist.*, 296 Or 365, 372 n 1, 677 P2d 671 (1984):

> "A motion for a directed verdict is a request to the court to rule as a matter of law that the movant is entitled to have the jury return a verdict in specified form. A motion for a directed verdict is not the proper vehicle for asking the trial court to decide as a matter of law that the movant is entitled to prevail on less than all of the elements of a claim. Rather, the claimant should proceed by proper request for a suitable peremptory instruction to the jury on each of the elements on which the claimant believes it is entitled to prevail as a matter of law."

Here, defendant's asserted lack of compliance with 49 CFR section 393.86 would not have entitled plaintiff to prevail on either of her claims or even any element of those claims. The Court of Appeals correctly held that plaintiff would have

been entitled to a peremptory jury instruction, not to a partial directed verdict. However, our holding that the trial court should have instructed the jury on the meaning of the regulation does not end the matter. The next inquiry is whether the trial court erred in refusing to give plaintiff's requested jury instructions.

A party in a civil action is entitled to jury instructions on its theory of the case only if its requested instructions state the law accurately. *Hernandez v. Barbo Machinery Co.*, 327 Or 99, 106, 957 P2d 147 (1998). An error in refusing to give requested jury instructions requires reversal only if the requested instructions "clearly, concisely, and accurately stated the law in question." *Severy v. Myrmo*, 186 Or 611, 614-15, 207 P2d 151 (1949); *see also Hoagland v. Solie*, 247 Or 38, 41, 427 P2d 109 (1967) (same). To determine whether plaintiff's requested jury instructions accurately would have informed the jury about the meaning of 49 CFR section 393.86, we must interpret the rule.

49 CFR section 393.86, a provision of the Federal Motor Carrier Safety Regulations, provides:

"*Every* motor vehicle, except truck-tractors, pole trailers, and vehicles engaged in driveaway-towaway operations, the date of manufacture of which is subsequent to December 31, 1952, which is so constructed that the body or the chassis assembly if without a body has a clearance at the rear end of *more than 30 inches* from the ground when empty, *shall be provided with bumpers or devices serving similar purposes* which shall be so constructed and located that:

"(a)   The clearance between the effective bottom of the bumpers or devices and the ground shall not exceed 30 inches with the vehicle empty;

"(b)   The maximum distance between the closest points between bumpers, or devices, if more than one is used, shall not exceed 24 inches;

"(c)   The maximum transverse distance from the widest part of the motor vehicle at the rear to the bumper or device shall not exceed 18 inches;

"(d) The bumpers or devices shall be located not more than 24 inches forward of the extreme rear of the vehicle; and

"(e) The bumpers or devices shall be substantially constructed and firmly attached. Motor vehicles constructed and maintained so that the body, chassis, or other parts of the vehicle afford the *rear end protection contemplated shall be deemed to be in compliance with this section.*" (Emphasis added.)

When this court construes a federal statute or regulation, we follow the methodology prescribed by federal courts. *See Northwest Airlines, Inc. v. Dept. of Rev.*, 325 Or 530, 538, 943 P2d 175 (1997) (following federal methodology in construing federal statute). In construing regulations, a federal court looks first to the plain meaning of the wording of the regulation. *United States v. Heller*, 726 F2d 756, 762 (Temporary Emergency Court of Appeals 1983). If the wording is ambiguous, the court examines administrative interpretation of the regulation. *Id.* In the absence of administrative interpretation, the court considers such factors as the overall purpose of the governing statute, the overall purpose of the regulation, the history of the regulation, and the practical consequences of suggested interpretations to determine the intent of the enacting body. *Id.*

49 CFR section 393.86 provides that, if a subject vehicle has a clearance at the rear end of more than 30 inches from the ground when empty, it shall be provided with bumpers or devices that serve similar purposes, *unless* the vehicle has been constructed and maintained so that the body, chassis, or other parts of the vehicle afford the "rear end protection contemplated" by the regulation. The regulation describes where bumpers or other devices shall be located, 49 CFR section 393.86(a) through (d), and requires that they be "substantially constructed and firmly attached." 49 CFR § 393.86(e).

The interpretive issue in this case is the meaning of the phrase "rear end protection contemplated" in the last sentence of the regulation. According to defendant, the phrase refers to the dimensional requirements specified in 49 CFR section 393.86(a) through (d). Under that interpretation, if the body, chassis or any part of a vehicle slopes down to 30

inches from the ground within 24 inches of the rear, the vehicle is deemed to satisfy the regulation, regardless of whether the vehicle has been equipped with bumpers or other devices. Plaintiff argues that the phrase "rear end protection contemplated" refers to bumpers or devices serving similar purposes and that, unless a vehicle has been constructed and maintained in a manner that provides the protection that such bumpers or similar devices would provide, the vehicle fails to comply with the regulation.

■    Although 49 CFR section 393.86 does not define the term "bumper," the plain meaning of that word is "a device or attachment * * * for absorbing shock and lessening or preventing damage in collision or impact with another object." *Webster's Third New Int'l Dictionary*, 296 (unabridged ed 1993). In addition to identifying the vehicles that must be equipped with bumpers or similar devices, the regulation prescribes a series of dimensional requirements that those bumpers or devices must meet. In light of the subject matter of the regulation, which is bumpers or devices serving similar purposes, we hold that the phrase "rear end protection contemplated" in the last sentence of the regulation refers to bumpers or devices serving similar purposes. Therefore, a vehicle that is more than 30 inches from the ground at its extreme rear end complies with the regulation only if it is equipped with bumpers or similar devices *or* if it has been constructed or maintained to provide the protection that would be afforded by bumpers or devices serving similar purposes, namely, absorbing shock and lessening or preventing damage in a collision or impact with another object.

■    Our holding that the phrase "rear end protection contemplated" refers to bumpers or devices serving similar purposes does not end the inquiry, because whether defendant's trailer complied with the regulation depends on the kind of damage that bumpers or similar devices are intended to prevent. Plaintiff contends that the purpose of the regulation is to prevent the damage caused by vehicle underride[6] and that

---

[6] The term "underride" refers to the front of a car or other small vehicle sliding under the rear end of a truck or trailer after the car or other vehicle strikes the truck or trailer from the rear. 46 Fed Regs 2,136, 2,137 (1981). Underride occurs if the rear end of the struck vehicle is relatively high off the ground. *Id.*

a vehicle that fails to prevent underride fails to comply with the regulation. Defendant disagrees that the goal of the regulation is to prevent underride. It argues that 49 CFR section 393.86 consists solely of a set of dimensional requirements and that its trailer met those requirements. Defendant is correct that the regulation consists solely of a set of dimensions and that it does not state that its purpose is to prevent underride. However, the regulation does contemplate that bumpers or similar devices will provide some form of rear-end protection. Because it is not clear from the words of the regulation what kind of rear-end protection it seeks to prevent, we conclude that 49 CFR section 393.86 is ambiguous.

Using the federal methodology for interpreting an ambiguous regulation, the next step would be to examine administrative interpretation of 49 CFR section 393.86. However, there has been no administrative interpretation of the regulation. Consequently, we turn to other factors. Plaintiff argues that any ambiguity is resolved by reference to 49 CFR section 178.345-1, which is a related regulation that applies to cargo tank motor vehicles. 49 CFR section 178.345-1 defines "rear bumper" as "the structure designed to prevent a vehicle or object from under-riding the rear of a motor vehicle." According to plaintiff, the reference following the definition of rear bumper in 49 CFR section 178.345-1—"See section 393.86 of this title"—means that bumpers or other devices required by 49 CFR section 393.86 must protect against or prevent vehicle underride.

Plaintiff's reliance on the definition of rear bumper in 49 CFR section 178.345-1 is misplaced. As noted above, 49 CFR section 393.86, which was adopted in 1952, does not define the term "bumper." Neither does it incorporate the definition of rear bumper contained in 49 CFR section 178.345-1. That is not surprising, because 49 CFR section 178.345-1 was not added to 49 CFR section 178.345 until 1989, nearly 40 years later. 54 Fed Reg 24,982, 25,020 (1989).

We turn to the history of 49 CFR section 393.86, which is the factor that is most instructive in resolving the ambiguity concerning the nature of the rear-end protection contemplated by the regulation. According to plaintiff, the regulation was adopted "to deal with the problem of rear

underride." Plaintiff's historical analysis consists solely of a statement by the National Highway Traffic Safety Administration in 1981 that the intent behind 49 CFR section 393.86 was "to help prevent underride." 46 Fed Reg at 2,137. The history of the regulation, however, is more complex than plaintiff indicates.

In 1946, W. Y. Blanning, Director of the Bureau of Motor Carriers of the Interstate Commerce Commission (Commission), proposed that the Commission adopt a rear-bumper regulation in response to the problem of underride. According to Blanning,

> "A study of numerous accidents reveals that an unduly high percentage of fatalities and serious injuries have resulted from the failure of large trucks and trailers, especially trailers, to be equipped with rear bumpers or that they were equipped with inadequate bumpers. The normal floor height of this type of equipment is such that a passenger car would ordinarily go under the floor and result in shearing off the top of the vehicle." Letter from W. Y. Blanning, Director of the Bureau of Motor Carriers, to Don Blanchard, Society of Automotive Engineers, dated January 2, 1947.

Blanning proposed that the Commission adopt a regulation requiring every vehicle whose extreme rear end is 24 inches or more from the ground when empty be equipped with "bumpers or similar devices" that create an effective distance between the bottom of the bumpers or devices and the ground of not more than 24 inches. Although Blanning was concerned about underride, he realized that equipping trucks or trailers with bumpers might affect the capacity of those vehicles to approach loading platforms. He asked the Bumper Heights Committee of the Society of Automotive Engineers to conduct research to determine whether a bumper regulation should be adopted, giving consideration both to the safety aspects of the proposal and to "the standardization of rear bumper heights in relation to loading platform heights." *Id.*

After conducting a series of studies, the Bumper Heights Committee reported that it believed that a bumper regulation "would be impractical and ineffective in materially reducing the amount of serious damage to colliding passenger cars or the number of fatalities to passengers." Society

of Automotive Engineers Technical Board Recommendations Covering Rear Bumpers on Trucks and Trailers (1947). The committee also believed that a bumper regulation would "only minimize the amount of damage and injury sustained from minor accidents at low speeds." *Id.* Nonetheless, it recommended that "if it is deemed necessary by the Interstate Commerce Commission to impose regulations of some description," a regulation should affect vehicles having a rear-end clearance of 30 inches or more from the ground, and the clearance between the effective bottom of the bumpers or devices and the ground should not exceed 30 inches when empty. *Id.* The committee's recommendation was based on a variety of factors, ranging from underride protection for passenger cars of the heights and lengths of such cars in the late 1940s to "prevent[ing] interferences with curbing, unevenness and other obstacles in roads and highways." *Id.* The Commission adopted the committee's dimensional recommendations when it promulgated 49 CFR section 393.86 in 1952. The regulation never has been amended.

The history of 49 CFR section 393.86 reveals that, although it was proposed because of the problem of underride, the Bumper Heights Committee believed that the regulation would be "impractical and ineffective" in materially reducing underride. In addition, the committee recommended that the Commission take into account factors other than underride in prescribing the dimensional requirements for bumpers or similar devices. The Commission acquiesced to the concerns of the trucking industry when it adopted the 30-inch ground-clearance requirement rather than a 24-inch ground-clearance requirement. Nonetheless, the history of 49 CFR section 393.86 reveals that the regulation was promulgated to provide *some* protection against underride.[7] In this case, it is uncontested that defendant's trailer was not

---

[7] According to the National Highway Safety Bureau, "a rear-end clearance as high as 24 inches above the ground exposes a significant proportion of the vehicle population to a serious underride hazard." 35 Fed Reg 12,956 (1970). The National Highway Traffic Safety Administration tentatively has concluded that, "for safety purposes, the vehicle standard should require that the distance between the ground and the lower edge of the guard must be at most 22 inches." 57 Fed Regs 252, 255 (1992); *See also* 49 CFR § 571.223 ("Rear Impact Guards"); 49 CFR § 571.224 ("Rear Impact Protection"); 61 Fed Reg 2004 (1996) (49 CFR § 571.224 adopted to address "the problem of rear underride crashes").

equipped with *any* bumpers or similar devices, and defendant put on no evidence that the trailer was designed and manufactured to provide the underride protection that would have been afforded by bumpers or similar devices meeting the dimensional requirements of the regulation.

■ As noted above, plaintiff requested three "Special Requested Jury Instructions." According to the Court of Appeals, the trial court's failure to give plaintiff's special requested jury instruction No. 8 was "particularly material," because it would have informed the jury that defendant's trailer failed to comply with 49 CFR section 393.86. *Hagan*, 148 Or App at 206. We turn to an examination of whether that instruction contains an accurate statement of the requirements of the regulation.

Plaintiff's requested jury instruction No. 8 states:

"I have explained to you that the jury is the sole judge of the facts. Interpreting the law and deciding issues of law, on the other hand, is the court's function. In carrying out my role to decide questions of law, the Court has determined, and I so instruct you, that the Gemstate trailer involved in this case did not meet the applicable federal standard, in that it was more than 30 inches from the ground at the end, and it was not designed or manufactured with bumpers or similar devices, and *did not otherwise afford the protection against vehicle underride contemplated by the federal regulation.*" (Emphasis added.)

That instruction states that defendant's trailer did not meet the applicable federal regulation because it was not designed or manufactured with bumpers or similar devices and "did not otherwise afford the protection against vehicle underride contemplated by the federal regulation." That instruction is consistent with our interpretation of 49 CFR section 393.86.

■ There is no evidence in this case that defendant's trailer was designed and manufactured to provide the protection against underride that is afforded by bumpers or similar devices that create a 30-inch ground clearance within 24 inches of the extreme rear end of the vehicle. The trial court erred in failing to give plaintiff's special requested jury instruction No. 8 to the jury, because defendant's failure to comply with 49 CFR section 393.86 is evidence that the jury

was entitled to consider in deciding whether defendant met the applicable standard of care in designing and manufacturing the trailer. The Court of Appeals correctly held that failure to give special requested jury instruction No. 8 was prejudicial to plaintiff and requires that the judgment be reversed. Because the failure to give that instruction was reversible error, we do not address whether plaintiff's other requested jury instructions also would provide a basis for reversal.

For the foregoing reasons, we hold that 49 CFR section 393.86, a federal safety regulation, is evidence that the jury may consider in determining whether defendant met the standard of care in designing and manufacturing its tiltbed trailer. The regulation also is law, and the court is required to instruct the jury on the law. Because plaintiff's special requested jury instruction No. 8 accurately states the requirements of 49 CFR section 393.86, the trial court erred in failing to give that instruction. We have considered defendant's other arguments and reject them without discussion.

The decision of the Court of Appeals is affirmed. The judgment of the circuit court is reversed, and the case is remanded to the circuit court for further proceedings.